# EXHIBIT D

# AUCTION PROCEDURES[1]

Set forth below are the bidding and auction procedures (the "Auction Procedures") that will govern the bidding and auction (the "Auction") for the following: (i) the transfer and sale by First Mariner Bancorp (the "Debtor") of all of the issued and outstanding shares (the "Bank Shares") of First Mariner Bank, a Maryland chartered trust company (the "Bank"), (ii) the sale, assignment and transfer of certain other assets related thereto, and (iii) the assumption and assignment of certain contracts and leases related thereto (the assets identified in the preceding clauses '(ii)' and '(iii)' being, collectively, the "Other Purchased Assets" and, together with the Bank Shares, collectively, the "Purchased Assets").

These Auction Procedures have been approved by an order of the United States Bankruptcy Court for the District of Maryland (the "Court"), as entered on _____ __, 2014 [Docket No. __] (the "Auction Procedures Order") in Bankruptcy Case No. 14-____(___), the chapter 11 case of the Debtor.

The Debtor has entered into that certain Merger and Acquisition Agreement dated February 7, 2014 (the "M&A Agreement"), by and among the Debtor, the Bank, and RKJS Bank, a Maryland chartered trust company ("RKJS" or the "Stalking Horse Bidder"), pursuant to which the Debtor shall, among other things, transfer and sell to RKJS the Purchased Assets as set forth set forth therein. A copy of the M&A Agreement is attached as **Exhibit B** to the Debtor's motion to approve the transfer and sale of the Purchased Assets and the Auction Procedures [Docket No. __]. The transaction contemplated by the M&A Agreement is subject to higher or otherwise better offers as set forth in these Auction Procedures.

**As more fully described in the Auction Procedures, below are important dates relating to the bidding, the Auction and the transfer and sale of the Purchased Assets:**

| | |
|---|---|
| **Bid Deadline** | _____ |
| **Auction** | _____ |
| **Objection Deadline** | _____ |
| **Sale Hearing** | _____ |

1. **Assets to be Transferred and Sold**

The Debtor is offering for sale the Bank Shares and the Other Purchased Assets. Except as otherwise agreed to in the definitive sale documents, all of the Debtor's rights, title and interest in and to the Purchased Assets shall be sold, transferred and assigned free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and any other interests thereon and therein (collectively, the "Encumbrances").

---

[1] All capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Auction Procedures Order.

2. **Stalking Horse Bidder**

The M&A Agreement provides and the Court has authorized RKJS (a) to act as the "stalking horse bidder" in the Auction (if any) for the Purchased Assets, and (b) to receive, in the event that RKJS is not the winning bidder at the Auction and subject to the M&A Agreement, (i) a break-up fee in an aggregate amount equal to the sum of $1,000,000, and (ii) a reimbursement of all reasonable documented fees and expenses incurred by RKJS and the Investors in connection with the M&A Transaction (including the negotiations, due diligence and bidding process relating thereto) in an amount not to exceed $1,750,000 ((i) and (ii) collectively, the "Stalking Horse Bidder Fee").

3. **Confidentiality Agreement/Due Diligence**

Prior to the Bid Deadline (defined below), the Debtor shall afford any potential bidder whom the Debtor reasonably determines has the financial wherewithal to submit a Qualified Bid the opportunity to conduct a reasonable due diligence review, in the manner determined by the Debtor, in its discretion, of the Purchased Assets in order to make a bid. The Debtor may, but shall not be obligated to, furnish any due diligence information after the Bid Deadline.

In order to receive any due diligence from the Debtor, a potential bidder must submit to the Debtor an executed confidentiality agreement (which shall inure to the benefit of the Successful Bidder and otherwise be in form and substance consistent with Section 5.20(b) of the M&A Agreement), such agreement to be provided to such bidder by the Debtor, and **submitted in electronic form** by the potential bidder to the Debtor's investment banker, **Sandler O'Neill + Partners L.P. ("Sandler O'Neill"), Attn: Edward S. Stein (estein@sandleroneill.com) and William Boyan III (bboyan@sandleroneill.com),** with copies to the Debtor's special transaction and regulatory counsel, Kilpatrick Townsend & Stockton LLP, Attn: Gary Bronstein (gbronstein@kilpatricktownsend.com) and Joel E. Rappoport (jrappoport@kilpatricktownsend.com). **Parties interested in bidding should contact Edward S. Stein (estein@sandleroneill.com) and William Boyan III (bboyan@sandleroneill.com) of Sandler O'Neill to request a copy of the confidentiality agreement.**

Information relevant to the Debtor and the Purchased Assets shall be made available to potential bidders as soon as practicable following the execution by potential bidders of the confidentiality agreement; *provided*, *however* that the Debtor may, in its discretion, require that the potential bidder also provide information set forth in section 4 hereof before receiving any due diligence information.

Neither the Debtor, the Bank, nor any of their respective employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors, or professionals is responsible for, nor shall they bear liability with respect to, any information obtained by potential bidders in connection with the M&A Transaction.

4. **Participation Requirements**

To be qualified to submit an initial bid, a potential bidder must submit to the Debtor, no later than ten (10) days before the Bid Deadline, current audited financial statements and the latest unaudited financial statements of the potential bidder or, if such potential bidder is an entity formed for the purpose of acquiring the Purchased Assets, current audited financial

statements and the latest unaudited financial statements of the equity holders or sponsors of such potential bidder who will guarantee the obligations of such potential bidder, or such other form of financial disclosure and/or credit quality support or enhancement, if any, that will allow the Debtor to make a reasonable determination as to such potential bidder's financial and other capabilities to consummate the M&A Transaction (including, but not limited to, the ability to obtain all necessary regulatory approvals and to sufficiently capitalize the Bank in the amount of the "Recapitalization Amount" provided in the M&A Agreement (or the financial equivalent thereof) for the ownership of the Purchased Assets on a timely basis).

The Debtor shall determine whether any potential bidder that has timely submitted these materials qualifies to submit a bid (such bidder, an "Overbidder," which term, for the avoidance of doubt, does not include RKJS).

5. **Bid Deadline**

The Overbidders' bid packages must be delivered in electronic form[2] to the parties listed below **so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) _____** (the "Bid Deadline")**, which is five (5) days before the Auction**:

(i) the Debtor, First Mariner Bancorp, Attn: Mark A. Keidel (MKEIDEL@1stMarinerBank.com);

(ii) investment banker to the Debtor, Sandler O'Neill, Attn: Edward S. Stein (estein@sandleroneill.com) and William Boyan III (bboyan@sandleroneill.com)

(iii) special transaction and regulatory counsel to the Debtor, Kilpatrick Townsend & Stockton LLP, Attn: Gary Bronstein (gbronstein@kilpatricktownsend.com) and Joel E. Rappoport (jrappoport@kilpatricktownsend.com);

(iv) bankruptcy counsel to the Debtor, Kramer Levin Naftalis & Frankel LLP, Attn: Robert T. Schmidt (rschmidt@kramerlevin.com) and Joshua K. Brody (jbrody@kramerlevin.com);

(v) counsel to the Stalking Horse Bidder, Venable LLP, Attn: Richard L. Wasserman (rlwasserman@venable.com); and

(vi) counsel to the official committee of unsecured creditors (the "Committee").

6. **Qualified Bid Requirements**

In order to participate at the Auction, each Overbidder must submit, by the Bid Deadline, a bid satisfying the following criteria:

(a) Competing Acquisition Agreement. The bid shall include an executed Agreement, as modified by the Overbidder (the "Competing Acquisition Agreement"), along with an electronic mark-up showing all changes to the M&A Agreement, which Competing Acquisition Agreement is on substantially the same terms as the M&A Agreement; *provided*,

---

[2] The Debtor may also request physical copies of any such documents.

*that* a Competing Acquisition Agreement may provide for a different structure for transferring the Purchased Assets than provided in the M&A Agreement.

(b) Replacement DIP Facility. The bid shall provide for a postpetition financing facility to replace the existing postpetition financing facility provided by RKJS (the "DIP Facility") under that certain Superpriority Debtor-in-Possession Credit Agreement (the "DIP Credit Agreement", a copy of which is annexed as **Exhibit B** to the Debtor's motion seeking approval thereof [Docket No. \_\_]) on terms that are substantially the same, and at least as favorable to the Debtor, as the terms of the DIP Credit Agreement. In order to satisfy this requirement, the Overbidder shall include an executed mark-up of the DIP Credit Agreement, along with an electronic mark-up showing all changes to the DIP Credit Agreement. The Debtor may, in its discretion, waive this requirement.

(c) Minimum Overbid. The proposed purchase price to be paid for the Purchased Assets must be in an amount at least $250,000 more than the maximum "Purchase Price" contained in the M&A Agreement, plus the amount of the Stalking Horse Bidder Fee (for purposes hereof, the amount of the Expense Reimbursement included in the Stalking Horse Bidder Fee shall be deemed to be $1,750,000, the maximum amount set forth in Section 5.17 of the M&A Agreement). In addition, such bid must result in a recapitalization of the Bank of at least the Recapitalization Amount.

(d) Closing Deadline. The bid shall contain a proposed closing date that is no later than April 30, 2014, or such later date as may be agreed by the Debtor and the Overbidder (the "Closing Deadline").

(e) Bid Irrevocable. The bids shall remain binding and irrevocable until the Sale Hearing or, if the bid is the Successful Bid, until the earlier of the closing of the sale or the Closing Deadline.

(f) No Breakup Fee. The bid must not request or entitle the Overbidder to receive any fee analogous to the Stalking Horse Bidder Fee, any transaction or breakup fee, expense reimbursement or similar fee or payment. **For the avoidance of doubt, by submitting a bid, the Overbidder agrees that it shall not be entitled to any such fee.**

(g) Deposit. An Overbidder must provide a cashier's check payable to FMAR, or a wire transfer to FMAR, in either case, to be deposited into a separate debtor-in-possession account, in an amount equal to the sum of: (i) the Stalking Horse Bidder Fee (for purposes hereof, the amount of the Expense Reimbursement shall be deemed to be $1,750,000, the maximum amount set forth in Section 5.17 of the M&A Agreement), (ii) $250,000, and (iii) the sum of (y) the "Obligations" (as defined in the DIP Credit Agreement) outstanding under the DIP Credit Agreement as of seven days before the Bid Deadline (the "DIP Measuring Date"), and (z) the aggregate amount of additional draws under the DIP Facility that FMAR anticipates to make between the DIP Measuring Date and the Sale Hearing, which shall be estimated in good faith by FMAR, in writing, one day after the DIP Measuring Date (the sum of (i) through (iii), the "Deposit"). The Overbidder shall forfeit the Deposit if (A) it is determined to be a Qualified Bidder (defined below) and withdraws or modifies its bid at any time (other than as provided herein) before the Court approves the Debtor's selection of the Successful Bidder (defined below), or (B) the Overbidder is the Successful Bidder and (x) modifies or withdraws the bid without the Debtor's consent before the consummation of the sale contemplated by the bid, or (y) breaches the Competing Acquisition Agreement. The Deposit shall be returned to the

Overbidder (1) as soon as practicable if the bidder is not determined to be a Qualified Bidder or (2) no later than five business days after entry of the Sale Order if the bidder is a Qualified Bidder (who has not otherwise forfeited its Deposit), but is not the Successful Bidder.  The Debtor will not be required to maintain any Deposit in an interest bearing account, but any interest earned on any Deposit will be remitted to the appropriate Qualified Bidder if the Deposit is returned to the Qualified Bidder pursuant to the above.

(h) <u>Due Diligence</u>.  The bid must not contain any due diligence or financing contingencies, and must acknowledge and represent that (i) the Overbidder has had an opportunity to conduct any and all due diligence regarding the Debtor, the Bank, and the Purchased Assets before making any bids; (ii) it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Debtor and/or the Bank and/or the Purchased Assets in making its bid; (iii) it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtor, the Purchased Assets and the Bank, or the completeness of any information provided in connection therewith (in all cases, other than as set forth in the Competing Acquisition Agreement), and (iv) it consents to be bound by the terms of these Auction Procedures.

(i) <u>Identity of Bidders</u>.  The Overbidder must fully disclose the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, as well as disclose the organization form and the business conducted by each entity.

(j) <u>Consents</u>.  The Overbidder must represent that it obtained all necessary organizational approvals to make its bid and to enter into and perform the Competing Acquisition Agreement and include evidence of authorization and approval from the Overbidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Competing Acquisition Agreement.

(k) <u>Contracts</u>.  The Overbidder shall designate an initial list of executory contracts and unexpired leases that it wishes to have assumed and assigned.

(l) <u>Additional Information</u>.  The Overbidder must furnish (i) information sufficient to establish that the Overbidder is capable and qualified, legally, and otherwise, of (A) unconditionally performing all obligations under the Competing Acquisition Agreement, including to pay the purchase price, and (B) obtaining all required regulatory approvals to perform all of its obligations under the Competing Acquisition Agreement and closing the transactions contemplated thereby not later than the Closing Deadline; and (ii) such other information as the Debtor may request.

**Each Person that submits a bid shall be deemed to have consented to the Debtor making the contents of such bid public, including in filings in the Court.**

To be a "Qualified Bid," a bid received from an Overbidder must meet the requirements set forth above.  The Debtor shall have the right to determine whether a bid received from an Overbidder (and any bid submitted at the Auction by an Overbidder) meets such requirements if, in the good faith opinion of the Debtor, after consulting with its investment bankers and financial and legal advisors, (i) the requirements set forth above are met; (ii) such bid is determined not to be materially more burdensome or conditional than the terms of the M&A Agreement; and (iii) the Debtor reasonably believes that such bid can be

5

consummated before the Closing Deadline if selected as a Successful Bid (defined below). The Debtor will notify the Overbidders whether their bid is a Qualified Bid as soon as practical after the Bid Deadline and before the Auction. For the avoidance of doubt, RKJS' bid, as set forth in the M&A Agreement, and each bid received from RKJS at the Auction that complies with the Auction Procedures shall be a Qualified Bid. RKJS and any entity that is determined by the Debtor to have submitted a Qualified Bid shall each be deemed a "Qualified Bidder."

Any entity that is not a Qualified Bidder shall not be permitted to attend and shall be disqualified from bidding for the Purchased Assets at the Auction. The Debtor shall, as soon as reasonably practical after receipt of a bid that is determined to be a Qualified Bid, provide copies of such Qualified Bid to RKJS.

### 7. No Auction if Only One Qualified Bid

If by the Bid Deadline, the only timely Qualified Bid received by the Debtor is from the Stalking Horse Bidder, the Debtor shall not conduct an Auction and the Stalking Horse Bidder will be deemed the Successful Bidder and its bid the Successful Bid. The Debtor shall proceed to request at the Sale Hearing (defined below) that the Court approve the transfer and sale of the Purchased Assets to the Stalking Horse Bidder in accordance with the M&A Agreement and request that the Sale Order be entered by the Court and that the Sale Order shall be made immediately effective upon entry, notwithstanding the provisions of Rule 6004(h) of the Bankruptcy Rules and Rule 62(g) of the Federal Rules of Civil Procedure.

### 8. Auction

If by the Bid Deadline, more than one timely Qualified Bid has been received by the Debtor, the Debtor will conduct the Auction with all Qualified Bidders. The Auction will be held on _____, 2014 at a location selected by the Debtor, which location will be provided to all Qualified Bidders and filed with the Court.

### 9. Auction Procedures

Only Qualified Bidders and their duly authorized representatives will be eligible to attend and participate in the Auction. Only the authorized representatives of each of the Qualified Bidders, the Committee, and the Debtor shall be permitted to be present at the Auction. Participation may be either in person or by telephone.

    (a) The following procedures will govern the Auction:

        (i) <u>Bankruptcy Court Jurisdiction</u>. All Qualified Bidders shall be deemed to have consented to the exclusive and core jurisdiction of the Court and to have waived any right to jury trial in connection with any disputes relating to the bidding process, the Auction, the transfer and sale of the Purchased Assets, and any other matter relating to, or contemplated by, the M&A Agreement and any Competing Acquisition Agreement.

        (ii) <u>Anti-Collusion</u>. At the commencement of the Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any

6

collusion with any other bidder or prospective bidder, or with the Debtor with respect to the bidding process, the Auction, or the sale transaction.

(iii) <u>Bids</u>. The bidding at the Auction shall commence at the amount of the highest or otherwise best Qualified Bid submitted by the Bid Deadline, as determined by the Debtor. Each subsequent bid shall be in increments of no less than $250,000.

(iv) <u>Calculating Bids</u>. In valuing bids, and for purposes of calculating each successive overbid by RKJS, the Debtor shall deem each bid by an Overbidder to have been automatically reduced by the amount of the Stalking Horse Bidder Fee (and for purposes hereof, the amount of the Expense Reimbursement shall be deemed to be $1,750,000, the maximum amount set forth in Section 5.17 of the M&A Agreement).

(v) <u>Credit-Bidding</u>. RKJS shall have the right to credit bid any and all "Obligations" (as defined in the DIP Credit Agreement) outstanding under the DIP Facility. For the avoidance of doubt, no other Qualified Bidder shall have the right to credit bid.

(vi) <u>Successful Bidder</u>. The Auction shall continue until there is only one offer that the Debtor determines, subject to Court approval, is the highest or otherwise best offer (the "Successful Bid") from among the bids submitted by the Qualified Bidders at the Auction. The bidder submitting such Successful Bid shall become the "Successful Bidder" and shall have such rights and responsibilities of the purchaser, as set forth in the Competing Acquisition Agreement, or the M&A Agreement, as applicable. If, at the Auction's conclusion, and consistent with these Auction Procedures, RKJS's final bid is greater than the highest bid made by any other Qualified Bidder, the amount of RKJS's final bid shall constitute the Purchase Price under the M&A Agreement. The Debtor may, subject to Court approval, elect to deem a particular Qualified Bid to be the best bid, notwithstanding the receipt of an apparently higher bid from an Overbidder.

(vii) <u>Other Procedures</u>. In addition to the procedures outlined above, the Debtor may employ and announce at the Auction other procedural rules that are reasonable under the circumstances for conducting the Auction; *provided, however,* that such rules are (i) not materially inconsistent with these Auction Procedures, the Bankruptcy Code, or any order of the Court and (ii) disclosed to each Qualified Bidder at the Auction.

(b) Within one (1) business day after the conclusion of the Auction, the Debtor shall file with the Court and serve upon all Qualified Bidders and other entities set forth in the Auction Procedures Order a notice identifying the Successful Bidder. If the Successful Bidder is not the Stalking Horse Bidder, the notice will summarize any material differences between the terms of the Competing Acquisition Agreement and the M&A Agreement and the Replacement DIP Facility and the DIP Facility, and will annex copies of the Competing Acquisition Agreement and the Replacement DIP Facility documents. The notice will include the supplemental Assignment Notice, if one is required pursuant to the Auction Procedures.

(c)     Under no circumstances shall the Debtor consider any bid made after the conclusion of the Auction.

10.     **Sale Hearing**

(a)     The Successful Bid will be subject to approval of the Court, through entry of a sale order (substantially in the form annexed to the Motion as **Exhibit A**) (the "Sale Order"), at a hearing that will take place at ___ on ____ 2014 in the Court (the "Sale Hearing"). The closing of the transfer and sale of the Purchased Assets to the Successful Bidder shall occur on the date as provided in, and otherwise in accordance with, the M&A Agreement or the Competing Acquisition Agreement of the Successful Bidder, as applicable.

(b)     The Successful Bidder's Replacement DIP Facility shall also be considered at the Sale Hearing.

(c)     RKJS, and any other entity that becomes the Successful Bidder, shall have standing and are deemed to be parties in interest with standing to be heard on any motion, hearing or other matter related to the Auction, the M&A Agreement or any bid, or other transfer and sale of the Purchased Assets.

11.     **Objections**

Objections, if any, to the transfer and sale of the Purchased Assets as contemplated by the Motion (whether under the M&A Agreement or in general), must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; and (c) be filed with the clerk of the Court for the District of Maryland (or filed electronically via CM/ECF with the Court) and actually received by the following parties: (i) the Debtor, First Mariner Bancorp, Attn: Mark A. Keidel, 1501 S. Clinton Street, Baltimore, MD 21224; (ii) the Debtor's bankruptcy counsel, Kramer Levin Naftalis & Frankel LLP, Attn: Robert T. Schmidt and Joshua K. Brody, 1177 Avenue of the Americas, New York, NY 10036; (iii) the Debtor's local Maryland bankruptcy counsel, Yumkas, Vidmar & Sweeney, LLC, Attn: Lawrence J. Yumkas, 2530 Riva Road, Suite 400, Annapolis, MD 2140; (iv) the Debtor's special transaction and regulatory counsel, Kilpatrick Townsend & Stockton LLP, Attn: Gary Bronstein and Joel E. Rappoport, 607 14th Street, NW, Suite 900, Washington, DC 20005-2018; (v) counsel to the Stalking Horse Bidder, Venable LLP, Attn: Richard L. Wasserman, 750 East Pratt Street, Suite 900, Baltimore, Maryland 21202; (vi) the Office of the United States Trustee, Attn: Mark A. Neal, 101 West Lombard Street, Suite 2625, Baltimore, Maryland 21201; and (vii) counsel to the official committee of unsecured creditors, **on or before 4:00 p.m. eastern time on _____, 2014 (the "Sale Objection Deadline")**.

The following objections may be raised orally at the Sale Hearing: (a) objections to the conduct of the Auction; (b) objections to the selection of the Successful Bidder; and (c) objections to the terms of the Competing Acquisition Agreement and/or the Replacement DIP Facility, *provided*, *that* objection with respect to the terms of the Competing Acquisition Agreement and/or Replacement DIP Credit Agreement may only be raised with respect to terms that are materially different from the terms of the M&A Agreement and/or DIP Credit Agreement (as applicable).

12. **Application of the Deposit**

If the Successful Bidder is not RKJS, on the first business day following entry of the Sale Order, a portion of the Deposit of such Successful Bidder shall be paid to RKJS on account of the full outstanding amount of the Obligations under the DIP Facility and the Stalking Horse Bidder Fee. The remaining amount of the Deposit of the Successful Bidder shall be held by the Debtor until the closing of the transfer and sale of the Purchased Assets in accordance with the Competing Acquisition Agreement and applied towards the purchase price of the Successful Bid in accordance therewith. If the transfer and sale to such Successful Bidder does not close on or before the Closing Deadline, the remaining amount of such Successful Bidder's Deposit shall, unless otherwise agreed to by the Debtor, be forfeited to and retained by the Debtor.

13. **Jurisdiction**

The Court shall retain exclusive jurisdiction over any matter or dispute relating to the transfer and sale of the Purchased Assets, the Auction Procedures, the Sale Hearing, the Auction, the Successful Bid, and/or any other matter that in any way relates to the foregoing.