

DAVID E. RICE
U.S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| FIRST MARINER BANCORP | * | Case No: 14-11952-DER |
| | | (Chapter 11) |
| Debtor | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

ORDER (A) AUTHORIZING AND APPROVING DEBTOR-IN-
POSSESSION FINANCING AND GRANTING SECURITY INTERESTS
AND A SUPERPRIORITY ADMINISTRATIVE CLAIM IN CONNECTION
THEREWITH, (B) APPROVING THE TERMS AND CONDITIONS OF THAT
CERTAIN SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT
AND RELATED DOCUMENTS, AND (C) MODIFYING THE AUTOMATIC
STAY TO THE EXTENT NECESSARY TO ENTER INTO THE DEBTOR-IN-
POSSESSION FINANCING AND EFFECTUATE THE TERMS THEREOF

Upon consideration of the Motion (the "Motion") filed by First Mariner Bancorp

(the "Debtor"), seeking, inter alia, (a) authority pursuant to sections 105 and 364(c)(1), (c)(2) and

(c)(3) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001 and 9014 of

the Federal Rules of Bankruptcy Procedure, for the Debtor to obtain post-petition loans,

advances and other credit accommodations from RKJS Bank ("RKJS" or, in its capacity as

lender, the "Lender") under that certain Superpriority Debtor-in-Possession Credit Agreement by

and between the Lender and the Debtor, attached as Exhibit B to the Motion and a modified

version of which was filed at Dkt. No. 130 (as modified, the "DIP Credit Agreement"), and that

certain Superpriority Debtor-in-Possession Security Agreement between the Lender and the

Debtor, attached to the Motion as Exhibit C (the "DIP Security Agreement," and together with

the DIP Credit Agreement and any other documents required to be executed in connection

therewith, collectively, the "DIP Loan Documents"), pursuant to which the Lender will be granted (i) a superpriority administrative claim pursuant to 11 U.S.C. § 364(c)(1); (ii) first priority security interests in and liens upon substantially all unencumbered property of the Debtor's estate pursuant to 11 U.S.C. § 364(c)(2); and (iii) junior security interests in and liens upon property of the Debtor's estate that is subject to an unavoidable lien pursuant to 11 U.S.C. § 364(c)(3); (b) approval of the terms and conditions of the DIP Loan Documents;[1] and (c) modification of the automatic stay solely to the extent necessary to enter into the proposed financing and effectuate the terms thereof; this Court having conducted a hearing on the Motion on March 7, 2014; and the Lender and Debtor having agreed and stipulated as follows, which stipulations this Court hereby approves and adopts:[2]

      A.    <u>Filing of Petition</u>.  On February 10, 2014 (the "Petition Date"), the Debtor filed a voluntary chapter 11 petition under the Bankruptcy Code thereby commencing the above-captioned bankruptcy case (the "Chapter 11 Case").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is authorized to operate its business as debtor in possession.

      B.    <u>Jurisdiction; Core Proceeding</u>.  Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2)(A), (D), (G), (K), (M) and (0).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District.

      C.    <u>Need for Funding</u>.  The relief sought in the Motion is necessary and in the best interests of the Debtor, its estate and creditors.  Without the proposed financing, the Debtor does not have the funds necessary to pay the costs and expenses in connection with (a) the Debtor's administration of this Chapter 11 Case, including, without limitation, the fees and expenses of estate professionals, (b) consummation of the transfer and sale of the Debtor's assets in order to maximize recoveries for the Debtor's creditors, (c) payments required to be made under the M&A Agreement (as defined below), and (d) management and preservation of the

---

[1]  Unless otherwise defined herein, capitalized terms as used herein have the meanings ascribed thereto in the DIP Credit Agreement.

[2]  Each of the following findings by the Court will be deemed a finding of fact if and to the full extent that it makes and contains factual findings and a conclusion of law if and to the full extent that it makes and contains legal conclusions.

Debtor's assets.  The Debtor has requested that Lender make loans and advances to Debtor in order to provide funds to pay such costs and expenses. The Lender is willing to make post-petition loans and advances and provide such other credit accommodations pursuant to section 364(c) of the Bankruptcy Code.  Among other things, entry of this Order will preserve and maintain the assets of the Debtor's estate, will avoid harm to, and is in the best interests of, the Debtor, its creditors and its estate.

   D. <u>Unavailability of Alternative Financing</u>.  The Debtor is unable to procure unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to section 364(b) of the Bankruptcy Code.

   E. <u>Notice</u>.  The Debtor has provided due and sufficient notice of the Motion and the relief requested to (i) the United States Trustee, (ii) all creditors known to the Debtor who may have liens against the Debtor's assets, (iii) any applicable taxing authority, (iv) counsel for the official committee of unsecured creditors (the "Committee"), (v) the twenty (20) largest unsecured creditors of the Debtor, and (vi) all other creditors and parties in interest requesting notice under Bankruptcy Rule 2002(i).

   F. <u>Business Judgment and Good Faith under Section 364(e) of the Bankruptcy Code</u>.  The terms of the DIP Credit Agreement, the other DIP Loan Documents and this Order have been negotiated in good faith and at arms-length within the meaning of section 364(e) of the Bankruptcy Code, are in the best interests of the Debtor, its creditors and the estate, are fair and equitable under the circumstances, and are enforceable pursuant to their terms.  The terms of the DIP Credit Agreement are (i) fair and reasonable and are well within the range of market terms for debtor-in-possession financing; (ii) reflect prudent exercise of business judgment by the Debtor, consistent with its fiduciary duties; (iii) constitute reasonably equivalent value and fair consideration; and (iv) are essential and appropriate for the continued operation and management of the Debtor's business and the preservation of its assets and properties.  This Order is subject to, and Lender is entitled to the benefits of, the provisions of section 364(e) of the Bankruptcy Code.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      <u>Authorization to Incur Indebtedness and Enter Into DIP Loan Documents</u>. The Motion is hereby granted and approved as set forth herein on a final basis.  Pursuant to section 364(c) of the Bankruptcy Code, the Debtor is hereby authorized and empowered to borrow up to the amount of $2,500,000 from the Lender, pursuant to the terms of this Order and the terms and conditions set forth in the DIP Credit Agreement and the other DIP Loan Documents.  The Debtor is authorized and directed to execute, deliver, perform and comply with the terms and covenants of the DIP Loan Documents and this Order.  The terms and conditions of the DIP Loan Documents are ratified and approved, and, together with this Order, shall be sufficient and conclusive evidence of the borrowing arrangements between the Debtor and Lender and of the terms and conditions of the DIP Loan Documents, for all purposes.  No such borrowings shall be made by the Debtor prior to the Sale Hearing without the consent of the Committee.

2.      <u>Use of Advances Made Under this Order and the DIP Credit Agreement</u>. The Debtor is hereby authorized to use the proceeds of the Loans and advances made, and other credit accommodations provided, by Lender under the DIP Credit Agreement to pay the Debtor's reasonable and documented out-of-pocket third party fees and expenses actually incurred in connection with the M&A Transaction and the Chapter 11 Case but limited to professional fees and expenses of court-approved professionals in the Chapter 11 Case (as may be subject to approval by the Court), and fees and expenses of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).  The proceeds and advances of such Loans shall be deposited into an escrow account at an institution other than First Mariner Bank, the terms of such escrow account to be mutually agreed upon among the Debtor and the Committee.

3.      <u>Grant of Liens and Superpriority Administrative Claim</u>.  Effective on and after the date of this Order, to secure the prompt payment and performance of any and all Obligations, Liens, liabilities and indebtedness (the "DIP Facility Obligations") of the Debtor to Lender of whatever kind or nature or description arising under the DIP Credit Agreement or

other DIP Loan Documents, Lender shall have and is hereby granted: (i) a superpriority administrative claim pursuant to section 364(c)(1) of Bankruptcy Code, having priority over any and all administrative expenses including, without limitation, administrative expenses or claims of the kind specified in sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b), and 726 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment; (ii) valid and perfected security interests and liens, senior to all other creditors of the estate of the Debtor, in and upon all of the issued and outstanding shares of First Mariner Bank and all other now existing and hereafter acquired personal and real property and fixtures of the Debtor and its bankruptcy estate, and the proceeds thereof, of whatever kind or nature, whether acquired prior to or subsequent to the Petition Date (other than the Avoidance Actions), that is not subject to an existing properly perfected and unavoidable lien; and (iii) valid and perfected junior security interests and liens in and upon all now existing and hereafter acquired personal and real property and fixtures of the Debtor and its bankruptcy estate, and the proceeds thereof, of whatever kind or nature, whether acquired prior to or subsequent to the Petition Date that is subject to an existing properly perfected and unavoidable lien pursuant to section 364(c)(3) of the Bankruptcy Code (collectively, clauses (i), (ii), and (iii) referred to as the "DIP Facility Superpriority Claims and DIP Facility Liens").

4.    No Surcharge of Collateral.  No costs or expenses of administration which have been or may be incurred by the Debtor or any creditor of the Debtor in connection with the Debtor's bankruptcy case, whether proceeding under chapter 11 or chapter 7 of the Bankruptcy Code, are or will be prior to or on a parity with the DIP Facility Superpriority Claims and DIP Facility Liens; and no such costs or expenses shall be imposed or charged against the Lender or the Collateral pursuant to section 506(c) of the Bankruptcy Code.

5.    Limitations on Use of Funds.  Notwithstanding the foregoing, no funds shall be paid or made available from the Loans for any fees, disbursements or expenses of any party, including the Debtor or the Committee, or any professional employed by any party, in

connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Facility Obligations, the DIP Facility Superpriority Claims and DIP Facility Liens; or (ii) any claims or actions to hinder or delay the Lender's assertion, enforcement or realization on the Collateral in accordance with the DIP Loan Documents or this Order; provided, however that notwithstanding anything to the contrary set forth in this Order, the Debtor may use funds from the Loans to take any action to enforce rights and remedies under this Order, the DIP Loan Documents, and/or that certain Merger and Acquisition Agreement, dated as of February 7, 2014, by and among RKJS, First Mariner Bank and the Debtor (the "M&A Agreement").

       6.     <u>Fees and Expenses of the Lender</u>.  In the event that an Alternative Transaction is consummated or this Court enters an Alternative Transaction Order, on the Maturity Date, the Debtor shall reimburse the Lender for its reasonable documented costs, fees (including reasonable attorneys' fees), charges, and expenses incurred in connection with the Loans, whether incurred prepetition or postpetition (collectively, the "Fees and Expenses"); provided, however, that if no Loans are made under the Facility, Borrower shall not be obligated to reimburse the Lender for such Fees and Expenses.  The obligation to pay the Fees and Expenses shall not reduce or otherwise affect the amount of the Commitment available to the Debtor.  In connection with the Fees and Expenses, no later than seven (7) calendar days prior to the Sale Hearing, the Lender shall transmit (subject to confidentiality and applicable claims of privilege) summary invoices of the Fees and Expense to the Debtor, the counsel to any Committee and the United States Trustee, each of whom shall have four (4) calendar days from receipt thereof to review and object to such invoices.  In the event of an objection, the parties shall confer with one another and attempt to reach agreement regarding the payment to be made. If agreement cannot be reached between the parties, the objecting party shall reasonably promptly submit to the Court a written objection setting forth the precise nature of the objection

and the monetary amount at issue, which objection shall be heard and determined by the Court at the Sale Hearing.  Absent a written objection to any summary invoice, the Lender's Fees and Expenses reflected in the applicable invoice shall not be subject to Bankruptcy Court approval and shall be paid in the amount reflected on such invoices.  If there is a timely objection, the Lender will get paid such Fees and Expenses that are agreed to by the parties or are approved by the Bankruptcy Court.  The Lender shall not be required to file any interim or final fee application(s) with the Court, provided, that the Court shall have jurisdiction to determine any disputes concerning the Lender's summary invoices.  Notwithstanding anything to the contrary contained herein, in the event that closing of the Contemplated Transactions occurs, including the merger as set forth in the M&A Agreement, the Debtor shall have no obligation to reimburse the Lender for the Fees and Expenses.

       7.   <u>Automatic Perfection</u>.  With respect to the debt incurred by Debtor under the DIP Credit Agreement, this Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests in and liens upon the property of the estate of Debtor granted to Lender as set forth herein, without the necessity of filing, recording or serving any financing statements, or other documents which may otherwise be required under federal or state law in any jurisdiction or the taking of any other action, including, without limitation, taking possession of or exercising control over any Collateral, to validate or perfect the security interests and liens granted to Lender in this Order and the DIP Loan Documents.  If Lender shall, in its discretion, elect for any reason to file any such financing statements or other documents with respect to such security interests and liens, the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon Lender's reasonable request and the filing, recording or service (as the case may be) of such financing statements or similar documents shall be deemed to have been made at the time of and on the Petition Date.  Lender may, in its discretion, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal

property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Order.

8.    <u>Preservation of Pre-Petition Liens</u>.  Notwithstanding anything to the contrary contained herein, any pre-petition secured lender's unavoidable liens and security interests in and against any assets of the Debtor shall continue in full force and effect to the extent existing on the date of the entry of this Order, subject to all rights and defenses of the Debtor, its estate and the Committee with respect thereto, and shall be and are unaffected by the DIP Credit Agreement and this Order.  The property that is encumbered by any such lien or security interest that is avoided shall become subject to Lender's first priority lien; the Debtor and its estate waiving the benefits of section 551 of the Bankruptcy Code.

9.    <u>Further Acts by Debtor</u>.  Debtor is hereby authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements (in addition to the DIP Loan Documents) as Lender may reasonably require and as evidence of and for the protection of the Obligations and the Collateral or which may be otherwise deemed necessary by Lender to effectuate the terms and conditions of this Order and the DIP Loan Documents.

10.    <u>No Control of the Debtor</u>.  In determining to make any extensions of credit under the DIP Credit Agreement and in negotiating and consummating the transactions authorized by this Order and the DIP Loan Documents, the Lender shall not be deemed to have been or to be in control of the operation of the Debtor.  In determining to make any Loan under the DIP Credit Agreement, or in exercising any rights or remedies as and when permitted pursuant to this Order, or the DIP Loan Documents, Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute).  Furthermore, nothing in this Order or the DIP Loan Documents shall in any way be construed or

interpreted to impose or allow the imposition upon Lender of any liability for any claims arising from the post-petition activities of the Debtor.

11.     <u>Limited Modification of Automatic Stay</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified solely to implement the DIP Loan Documents and to the extent necessary to permit Lender to exercise, upon the occurrence and during the continuance of any Event of Default, any or all rights and remedies provided for in the DIP Loan Documents; <u>provided</u>, <u>however</u>, that prior to the exercise of remedies under the DIP Loan Documents (other than the right to charge interest at the default rate and to deny making any Loan under the DIP Loan Documents), the Lender shall be required to give five Business Days written notice to the Debtor, its bankruptcy counsel, the Committee's counsel and the U.S. Trustee.  Notwithstanding the occurrence of an Event of Default or the Maturity Date, all of the rights, remedies, benefits, and protections provided to the Lender under the DIP Loan Documents and this Order shall survive the Maturity Date.

12.     <u>Access to the Debtor</u>.  Without limiting the rights of access and information afforded the Lender under the DIP Loan Documents, the Debtor shall permit representatives, agents and/or employees of the Lender to have reasonable access to its knowledgeable personnel, premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtor's business) and shall cooperate, consult with, and provide to such representatives, agents and/or employees all such non-privileged information as they may reasonably request.

13.     <u>Insurance Policies</u>.  Upon entry of this Order, the Lender shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee on each insurance policy maintained by the Debtor which in any way relates to the Collateral.  The Debtor is authorized and directed to take any action necessary to have the Lender added as an additional insured and loss payee on each insurance policy.

14.    <u>Replacement DIP Financing</u>.[3]  In the event that a bidder other than the Lender is the Successful Bidder for the Debtor's Purchased Assets, subject to Court approval at the Sale Hearing, the Debtor is authorized to enter into a replacement debtor-in-possession financing facility (the "Replacement DIP Facility") with such Successful Bidder on terms that are substantially the same (and at least as favorable to the Debtor) as those embodied in the DIP Loan Documents and this Order, subject to final approval at the Sale Hearing.  In such event, the Auction Results Notice will contain notice of such Replacement DIP Facility, together with a summary of any material differences between such Replacement DIP Facility and the terms of the DIP Loan Documents and this Order, and no other or further notice or motion will be required with respect thereto.  If the Court approves the Replacement DIP Facility, but subject to RKJS being paid in full, on the Maturity Date, all Obligations owing to it under the DIP Loan Documents, each of the terms of this Order shall apply in all respects to the Replacement DIP Facility and all references in this Order to the Lender shall in all regards be understood to refer to the lender under the Replacement DIP Facility, and all references in this Order to the DIP Credit Agreement or the other DIP Loan Documents shall in all regards be understood to refer to the loan documents governing the Replacement DIP Facility; <u>provided</u>, <u>however</u> the Debtor may request non-material changes to this Order to be made to conform to the specific terms of the Replacement DIP Facility.

15.    <u>Survival of Provisions</u>.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered dismissing the Chapter 11 Case, converting Debtor's Chapter 11 case to a Chapter 7 case, or any order which may be entered confirming or consummating any Chapter 11 plan, and the terms and provisions of this Order as well as the priorities in payment, liens, and security interests granted pursuant to this Order and the DIP Credit Agreement shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Order until all Obligations are indefeasibly satisfied and discharged;

---

[3]  Terms used in this paragraph but not defined elsewhere in this Order have the meanings ascribed to them in the Motion.

provided, that, at such time, all obligations and duties of the Lender to provide any loans and advances under this Order or the DIP Credit Agreement shall terminate immediately upon the earlier of the date of any Event of Default, the Maturity Date or the date that the Plan of Reorganization becomes effective unless Lender has given its express prior written consent thereto.  For the avoidance of doubt, such consent shall not be implied from any other action, inaction or acquiescence by Lender.

16.    Resolution of Any Conflicting Terms.  To the extent the terms and conditions of the DIP Loan Documents are in conflict with the terms and conditions of this Order, the terms and conditions of this Order shall control.

17.    Order Binding on Successors.  The provisions of this Order shall be binding upon and inure to the benefit of the Lender, the Debtor, and their respective successors and assigns (including any trustee or other estate representative appointed or elected as a representative of the Debtor's estate, whether the bankruptcy case is a proceeding under chapter 11 or chapter 7 of the Bankruptcy Code, or of any estate in any successor case).  Except as otherwise explicitly set forth in this Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Order or the DIP Credit Agreement.

18.    Subsequent Reversal.  If any or all of the provisions of this Order or the DIP Credit Agreement are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court without the consent of the Lender: (i) such modification, vacatur, amendment, or stay shall not affect the validity of any Obligation to the Lender that is or was incurred prior to the effective date of such modification, vacatur, amendment, or stay (the "Modification Date"), or the DIP Facility Superpriority Claims and DIP Facility Liens authorized or created by this Order and the DIP Loan Documents; (ii) the Obligations that were incurred by the Debtor prior to the Modification Date shall be governed in all respects by the original provisions of this Order and the DIP Loan Documents, and (iii) the validity of any Obligations and the DIP Facility Superpriority Claims and DIP Facility Liens is and shall be protected by sections 364(e) of the Bankruptcy Code.

19.     <u>Objections Overruled</u>.  All objections to the entry of this Order not otherwise resolved are hereby overruled.

20.     <u>Order Effective Immediately</u>.  This Order shall be effective immediately upon entry by the Court, and any stay of the effectiveness of this Order  is hereby waived.  This Court has and will retain jurisdiction to enforce any terms of, and resolve any issues and disputes raised with respect to, this Order.

21.     <u>Notice Sufficient</u>.  The Debtor has provided notice of the Motion to all parties required under section 4001(c) of the Bankruptcy Rules and such notice complies with the requirements of Local Bankruptcy Rule 4001-4.


cc:     Lawrence J. Yumkas, Esquire
        Yumkas, Vidmar & Sweeney, LLC
        2530 Riva Road, Suite 400
        Annapolis, Maryland  21401

        Robert T. Schmidt, Esquire
        Joshua K. Brody, Esquire
        Kramer Levin Naftalis & Frankel LLP
        1177 Avenue of the Americas
        New York, New York  10036

        Attached Service List


**END OF ORDER**

First Mariner Bank
Attention: Joseph F. Howard,
Sr. Vice President, General Counsel
1501 South Clinton Street
Baltimore, Maryland  21224

The Bank of New York, Trustee
f/b/o Mariner Capital Trust II
Attn: Corporate Trust Administration
White Clay Center, Route 273
Newark, Delaware  19711

Wells Fargo Bank, NA, Trustee
f/b/o Mariner Capital Trust III
Attn: Corporate Trust Administration
919 Market St. Suite 700
Wilmington, Delaware  19801

The Bank of New York, Trustee
f/b/o Mariner Capital Trust IV
Attn: Corporate Trust Administration
White Clay Center, Route 273
Newark, Delaware  19711

Wells Fargo Bank, NA, Trustee
f/b/o Mariner Capital Trust VI
Attn: Corporate Trust Administration
919 Market Street, Suite 700
Wilmington, Delaware  19801

Wilmington Trust Company, Trustee
f/b/o Mariner Capital Trust V
Attn: Corporate Trust Administration
Rodney Square N 1100 N. Market St.
Wilmington, Delaware  19890-1600

Wilmington Trust Company, Trustee
f/b/o Mariner Capital Trust VII
Attn: Corporate Trust Administration
Rodney Square N., 1100 N. Market St.
Wilmington, DE 19890-1600

Internal Revenue Service
P. O. Box 7346
Philadelphia, Pennsylvania 19101-7346

IRS
Special Procedures – Insolvency Unit
31 Hopkins Plaza Room 1150
Baltimore, Maryland  21201

Federal Deposit Insurance Corporation
Julie Howland
350 Fifth Avenue
New York, New York  10118-0110

Federal Reserve Bank of Richmond
Richard Gilbert
701 East Byrd Street
Richmond, Virginia  23219

Emmet, Marvin & Martin, LLP
120 Broadway 32nd Floor
New York, New York  10271

Steven N. Serajeddini, Esquire
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois  60654

David R. Seligman, Esquire
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois  60654

Comptroller of Maryland
Compliance Division
110 Carroll Street
Annapolis, Maryland  21411

The following parties received
electronic notice of the filing:

Office of the U.S. Trustee
101 West Lombard Street
Baltimore, Maryland  21201

Gary R. Bronstein, Esquire
Kilpatrick Townsend & Stockton LLP
607 14th Street, NW Suite 900
Washington, D.C.  20005-2018

Joel Rappoport, Esquire
Kilpatrick Townsend & Stockton LLP
607 14th Street, NW Suite 900
Washington, D.C.  20005-2018

Robert T. Schmidt, Esquire
Joshua K. Brody, Esquire
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York  10036

Martin H. Schreiber II, Esquire
Law Office of Martin H. Schreiber II, LLC
3600 Clipper Mill Road, Suite 201
Baltimore, Maryland  21211

Edward S. Stein
Sandler O'Neill & Partners LP
1251 Avenue of the Americas, 6th Floor
New York, New York  10020

Lawrence J. Yumkas, Esquire
Yumkas, Vidmar & Sweeney, LLC
2530 Riva Road, Suite 400
Annapolis, Maryland  21401

Joel I. Sher, Esquire
Daniel J. Zeller, Esquire
Anastasia McCusker (Albright), Esquire
Shapiro Sher Guinot & Sandler
36 South Charles Street, 20th Floor
Baltimore, Maryland  21201-3147

Edmund Goldberg, Esquire
United States Department of Justice
101 West Lombard Street, Suite 2625
Baltimore, Maryland  21201

Richard L. Wasserman, Esquire
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland  21202