Page 1

1  UNITED STATES BANKRUPTCY COURT

2  DISTRICT OF MARYLAND

3  CASE NO. 14-11952-DER

4  - - - - - - - - - - - - - - - - - - - x

5  In the Matter of:

6

7  FIRST MARINER BANCORP,

8

9          Debtor.

10 - - - - - - - - - - - - - - - - - - - x

11

12                      U.S. Bankruptcy Court

13                      101 West Lombard Street

14                      Baltimore, Maryland

15

16                      April 15, 2014

17                      10:03 AM

18

19 B E F O R E :

20 HON. DAVID E. RICE

21 U.S. BANKRUPTCY JUDGE

22

23

24

25 ECRO - SANDY FRANK

Page 2

1    HEARING Re [15] Motion For Sale of Property under § 363(b)

2    for (I) an Order (A) Approving Bidding and Auction

3    Procedures with Respect to the Sale of Certain Assets, (B)

4    Approving Bidding Protections for the Stalking Horse Bidder,

5    (C) Approving Procedures Related to the Assumption and

6    Assignment of Certain Executory Contracts and Unexpired

7    Leases, (D) Approving the Form and Manner of Notices Related

8    to the Auction and Sale, and (E) Scheduling the Sale

9    Hearing, and (II) an Order (A) Approving Such Sale Free and

10   Clear of Liens, Claims, Encumbrances and Other Interests and

11   (B) Granting Related Relief. Notice Served on 2/10/2014,

12   Filed by First Mariner Bancorp.

13

14   HEARING Re [162] Objection on behalf of RKJS Bank Filed by

15   Richard Wasserman.

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dawn South

Page 3

```
 1   A P P E A R A N C E S :

 2   KRAMER LEVIN NAFTALIS & FRANKEL LLP

 3        Attorneys for the Debtor

 4        1177 Avenue of the Americas

 5        New York, NY 10036

 6

 7   BY:  ROBERT T. SCHMIDT, ESQ.

 8        P. BRADLEY O'NEILL, ESQ.

 9

10   YUMKAS, VIDMAR & SWEENEY, LLC

11        Attorney for the Debtor

12        2530 Riva Road

13        Suite 400

14        Annapolis, MD 21401

15

16   BY:  LAWRENCE JOSEPH YUMKAS, ESQ.

17

18   KIRKLAND & ELLIS, LLP

19        Attorneys for Official Committee of Unsecured

20        Creditors

21        300 North LaSalle

22        Chicago, IL 60654

23

24   BY:  JEFFREY GETTLEMAN, ESQ.

25
```

Page 4

1   VENABLE LLP

2         Attorneys for RKJS Bank

3         750 East Pratt Street

4         Suite 900

5         Baltimore, MD  21202

6

7   BY:  RICHARD WASSERMAN, ESQ.

8         MICHAEL SCHIFFER, ESQ.

9         CHRISTOPHER R. MELLOTT, ESQ.

10        JOHN B. BEATY, ESQ.

11

12  REED SMITH LLP

13        Attorneys for National Penn Bank

14        1301 K Street NW

15        Suite 1100 - East tower

16        Washington, DC 20005

17

18  BY:  CLAUDIA Z. SPRINGER, ESQ.

19        PAUL J. JASKOT, ESQ.

20        TRAVIS P. NELSON, ESQ.

21        LAUREN S. ZABEL, ESQ.

22

23

24

25

Page 5

```
 1                   P R O C E E D I N G S

 2        (Call to Court)

 3             THE CLERK:  The United States Bankruptcy Court for

 4     the District of Maryland is now in session, the Honorable

 5     David E. Rice presiding.  Please be seated and come to

 6     order.

 7             On the 10 o'clock docket calling the case of First

 8     Mariner Bancorp, case number 14-11952.  Counsel, please

 9     identify yourselves and your clients for the record.

10             MR. O'NEILL:  Good morning, Your Honor, Bradley

11     O'Neill, Kramer Levin, on behalf of the debtor.  With me are

12     my colleagues, Robert Schmidt and Larry Yumkas, our local

13     counsel.  Also with us is the debtor's interim CEO, Mark

14     Keidel.

15             THE COURT:  Good morning.

16        (A chorus of good morning)

17             MS. SPRINGER:  Good morning, Your Honor, Claudia

18     Springer from Reed Smith on behalf of National Penn Bank and

19     National Penn Bank shares.  And with me today in court is --

20     are my partners and colleague, Paul Jaskot, Travis Nelson,

21     Lauren Zabel.  We also have in court the CEO of National

22     Penn Bank, Scott Fainor, and the CFO, Mike Hughes.  Also in

23     the courtroom today is Jason Reed from Jeffries, our

24     investment banker.  Thank you.

25             THE COURT:  Good morning to all of you.
```

1              UNIDENTIFIED SPEAKER:  Good morning.

2              MR. GETTLEMAN:  Good morning, Your Honor, Jeffrey

3    Gettleman, I'm from Kirkland & Ellis, representing the

4    committee.

5              THE COURT:  Good morning.

6              MR. GETTLEMAN:  Your Honor, if I could beg your

7    indulgence.  After we introduce ourselves I have a

8    preliminary matter that I'd like to bring to the Court's

9    attention.

10             THE COURT:  Very well.

11             MR. GETTLEMAN:  Thank you.

12             MR. WASSERMAN:  Good morning, Your Honor, Richard

13   Wasserman of Venable LLP on behalf of RKJS Bank, and with me

14   today from Venable are Christopher Mellott, Mike Schiffer,

15   and John Beaty.  And we also have with us today in court Rob

16   Kunisch who is the president of RKJS Bank.

17             THE COURT:  Good morning to all of you.

18             UNIDENTIFIED SPEAKER:  Good morning, Your Honor.

19             THE COURT:  We are here today for resumption or

20   continuation of the hearing on approval of a proposed sale

21   and the objection filed by RKJS.

22             Let me say at the outset as I did yesterday, there

23   will be no use of electronic devices by anyone who's in the

24   gallery, that is to say behind the bar where the swinging

25   door is.  Attorneys who are on the inside of the bar may use

1    electronic devices in connection with the prosecution of the

2    case.  There's to be no photography or recording of any of

3    the proceedings.  If parties in the gallery wish to use cell

4    phones then they may leave the courtroom and do so in a way

5    that's otherwise consistent with the rules of the court

6    outside the courtroom.

7            Now, Mr. Gettleman, you indicated there was some

8    preliminary matter you wished to bring before the Court?

9            MR. GETTLEMAN:  Yes, Your Honor.

10           So since the bid that was submitted by RKJS

11   earlier this week the committee has conducted quite a few

12   discussions with RKJS and with the debtor regarding this

13   bid, and as of this morning RKJS has offered certain

14   modifications to their bid, which is to committee's view are

15   enhancements, and with those enhancements, Your Honor, the

16   committee would be prepared to support the Court's

17   resumption of the auction process.

18           Mr. Schiffer will explain the details of how the

19   bid is changing.

20           THE COURT:  All right.  I think that for the sake

21   of everyone in the fairness of the continuation of the

22   hearing we ought to hear what those terms are so that

23   they're on the record and then we'll take up the

24   presentation of evidence after that.

25           Mr. Schiffer.

```
1              MR. SCHIFFER:  Good morning, Your Honor.

2              THE COURT:  Good morning.

3              MR. SCHIFFER:  To be clear for the record the bid

4    to which Mr. Gettleman referred was the letter sent to the

5    creditors' committee as well as the debtor on Sunday,

6    April 13.

7              THE COURT:  This is the one that Mr. Kunisch

8    indicated yesterday on the record, RKJS indicated it was

9    contractually bound to now.

10             MR. SCHIFFER:  Correct.

11             THE COURT:  Or as of yesterday.

12             MR. SCHIFFER:  Correct.

13             THE COURT:  Okay.

14             MR. SCHIFFER:  There have been two effective

15   modifications to that based on discussions with the

16   creditors' committee.

17             The first is that RKJS would put up a deposit that

18   -- of $3 million, which would be non-refundable, except in

19   the circumstances of a breach of the merger agreement by the

20   debtor or the bank or a material adverse effect under the

21   merger agreement as currently contemplated.

22             The second aspect of this is that we would agree

23   that if we do not have regulatory approval by May 31 there'd

24   be an automatic extension to June 30.  And similarly if

25   there's not regulatory approval by June 30 there would be an
```

1    automatic extension to July 31.

2            For clarity in each case RKJS would continue to

3    suffer the risk of bank losses during that time frame,

4    meaning that there would be no purchase price adjustment

5    based on the capital of the bank through that time period.

6            The further caveat to the offer and agreement with

7    the creditors' committee is that the creditors' committee

8    would continue to support the RKJS offer as revised,

9    assuming that based on the auction procedures as outlined

10   yesterday in the spreadsheet, at the end of the day the RKJS

11   bid is dollar value in excess of the Nat. Penn bid after the

12   resumed auction, meaning that no discount would be applied

13   to the RKJS bid amount based on either regulatory risk or

14   investor risk as was outlined yesterday, and that all other

15   discounts that were discussed yesterday and included in the

16   spreadsheet would continue to be applied, as well as the

17   $200,000 extra premium applied to the RKJS willingness to

18   remove the purchase price adjustment.

19           THE COURT:  Is this development, let's call it,

20   something that the rest of the parties in the courtroom know

21   about or is it being announced for the first time to them

22   right now?

23           MR. SCHIFFER:  We announced it to debtor's counsel

24   admittedly 10 minutes ago as the agreement was reached 20

25   minutes ago, and Nat. Penn's counsel, at least I've not had

1    a chance to relay it to them, I doubt anyone has.

2              THE COURT:  All right.

3              MR. SCHIFFER:  If I could just --

4              THE COURT:  Yes, you may.

5         (Pause)

6              MR. SCHIFFER:  Nothing else.

7              THE COURT:  All right, thank you.

8              Does the debtor or National Penn want to have some

9    period of time to absorb what's just been said or do you

10   wish to do something different in terms of the course of

11   these proceedings in light of this development?  I just want

12   to make sure we understand where we're going from here.

13             MR. SCHMIDT:  Good morning, Your Honor, for the

14   record Robert Schmidt, Kramer Levin Naftalis & Frankel for

15   the First Mariner Bancorp.

16             As Mr. Schiffer correctly pointed out we did learn

17   of this development in the hallway basically, you know,

18   walking in, so we really haven't had a chance to digest

19   these changes and what the impact might be to the process.

20             So we do think it would be worthwhile if we could

21   take a -- hopefully a very short break just for me to

22   discuss it with the management team and our other advisors.

23             THE COURT:  All right, let's take a ten-minute

24   recess.

25             THE CLERK:  All rise.  The Court is in recess.

1          (Recess at 10:12 a.m.)

2               THE CLERK:  The United States Bankruptcy Court for

3     the District of Maryland now resumes its regular session.

4               THE COURT:  I think we left off with the debtor

5     wanting to advise the Court after caucusing in the hallway

6     or whatever what's the status of things from the debtor's

7     perspective here?

8               MR. SCHIFFER:  Thank you, Your Honor.  Again,

9     Robert Schmidt for the record.

10              Your Honor, we took the time to, you know, caucus

11    internally amongst the professionals who are here on behalf

12    of the debtor and we are in the process of arranging either

13    a call of our board subcommittee to consider this revised

14    proposal on the committees' position, which we're hoping to

15    have at either 11:15 or 11:30.  Probably more likely 11:30.

16              THE COURT:  All right.  Then what would you

17    propose we do in the meantime?

18              MR. SCHMIDT:  Well, it had originally been my

19    suggestion, Your Honor, that the -- as I understand process

20    wise the next witness that was going to be on would have

21    been from Nat. Penn.  I think discussing with Ms. Springer I

22    think their position is -- or their preference is not to go

23    forward with that witness until they know where the debtor's

24    position is on this development.

25              THE COURT:  I see.  All right.  Is that correct,

1    Ms. Springer?

2              MS. SPRINGER:  Yes, Your Honor, that's correct.

3              THE COURT:  All right.  Does anybody else wish to

4    be heard on this request, which I take to be a request that

5    we continue this hearing until some time after the debtor

6    has had the opportunity to have this board meeting, correct?

7              There being no opposition to that the Court could

8    resume at 1 o'clock.  I think that would give -- unless

9    you're anticipating a lengthy meeting -- that would give you

10   an opportunity have the meeting, confer, perhaps get a bite

11   of lunch, and get back here at 1 o'clock.

12             MR. SCHMIDT:  Your Honor, I think, you know,

13   1 o'clock would be more than sufficient.  I can't imagine it

14   going longer.

15             THE COURT:  All right.  Then we will resume at

16   1 o'clock.  Thank you all.

17             MR. SCHMIDT:  Thank you, Your Honor.

18             THE CLERK:  All rise.  Court is in recess until

19   1 p.m.

20        (Recess at 10:47 a.m.)

21             THE CLERK:  The United States Bankruptcy Court for

22   the District of Maryland now resumes its regular session.

23   The Honorable David E. Rice presiding.  Please be seated and

24   come to order.

25             Recalling the case of First Mariner Bancorp, case

1   number 14-11952.  Counsel, please identify yourselves and

2   your clients for the record.

3          MR. SCHMIDT:  Good afternoon, Your Honor, Robert

4   Schmidt and Bradley O'Neill from Kramer Levin Naftalis &

5   Frankel, along with Larry Yumkas, our co-counsel.

6          THE COURT:  Good afternoon.

7          MS. SPRINGER:  Good afternoon, Claudia Springer,

8   Reed Smith for National Penn Bank, with my colleagues, same

9   colleagues as this morning.

10          THE COURT:  Good morning to you -- or good

11   afternoon to you.

12          MR. GETTLEMAN:  Good afternoon, Your Honor,

13   Jeffrey Gettleman from Kirkland & Ellis representing the

14   creditors' committee.

15          THE COURT:  Good afternoon.

16          MR. WASSERMAN:  Good afternoon, Your Honor,

17   Richard Wasserman, Venable LLP on behalf of RKJS Bank.  With

18   me this afternoon is Mr. Mellott, Mr. Schiffer, and

19   Mr. Beaty, along with our client, Bob Kunisch, who's the

20   president of RKJS Bank.

21          THE COURT:  Good afternoon to all of you.

22          Well we are reassembled in this case.  We were

23   awaiting I suppose a report from debtor's counsel on what

24   development, if any, there is as a result of the board

25   meeting.

1           MR. SCHMIDT:  Yes.  Good afternoon, Your Honor.

2    Again, Robert Schmidt, Kramer Levin Naftalis & Frankel.

3           We certainly want to thank Court for extending the

4    -- or giving the adjournment to allow us to assemble our

5    board, which we were able to do telephonically largely.

6           the board was brought up to speed as to the

7    developments of this morning, we invited the advisors for

8    the creditors' committee to make a presentation during that

9    call, which they did, and after substantial deliberation,

10   you know, the board authorized management to agree to

11   basically support the committees' position, and you know,

12   agree that the auction should be reopened to entertain the

13   enhanced RKJS bid on the terms described by Mr. Schiffer on

14   the record this morning.

15          And so that's kind of where we are, and we look

16   procedurally to the Court as to, you know, how we'd like to

17   proceed with the rest of the proceedings.

18          THE COURT:  Well it seems to me I'm going want to

19   hear from Ms. Springer, but before I do are you proposing

20   anything in particular?

21          MR. SCHMIDT:  No, Your Honor, not particular.  I

22   agree, you know -- you know, we certainly need to, you know,

23   hear from counsel for Nat. Penn and anybody else for that

24   matter that wants to be heard.  But, you know, we're

25   prepared to, you know, proceed forward with a reopened

1    auction I guess at a time and place to be determined.

2              We haven't had a chance to consult with

3    Mr. Wasserman on that particular aspect of things or anybody

4    else for that matter.

5              THE COURT:  I see.  All right.

6              MR. SCHMIDT:  Thank you.

7              THE COURT:  Well let's hear from others.

8    Ms. Springer?

9              MS. SPRINGER:  Thank you, Your Honor.

10             As we stated earlier I think and made pretty clear

11   National Penn Bank will decline to participate in any

12   reopened auction, and in fact if the auction is reopened we

13   will withdraw our -- our last bid.  So that is the decision

14   of National Penn Bank.

15             THE COURT:  Well, all right, I understand what

16   you're saying.  It seems to me you have three choices.  You

17   can -- putting aside the unusual procedural circumstances

18   that we all find ourselves in here -- everyone else in the

19   courtroom is apparently in favor of reopening the auction

20   and permitting consideration of this new enhanced bid from

21   RKJS, and it seems to me that you and your client have one

22   of three choices.

23             You can -- you can press on with your case trying

24   to, in light of this collected position, have the Court

25   nevertheless approve sale to your client.

```
 1              You can agree that the auction be reopened and

 2     participate in the bidding.  I certainly think that if the

 3     auction is going to be reopened and the bid of RKJS is to be

 4     considered that your client should have an opportunity to

 5     bid.  This can't be the end of the bidding.  But they're not

 6     obligated to make another bid, and if your client is -- has

 7     decided they're not going bid then I guess the Court needs

 8     to -- I'm looking to you I guess for guidance.  I'm happy to

 9     take a recess if you want to consult with your client.

10              MS. SPRINGER:  Your Honor --

11              THE COURT:  It seems to me if you want to -- if

12     you don't want to press a case for approval of your bid and

13     you're going to acquiesce in the auction being reopened and

14     then in effect withdraw your bid and not bid against this

15     latest bid from RKJS, then it seems to me you might as well

16     just say so.  It seems to me you have to do one or the

17     other.

18              MS. SPRINGER:  From a procedural standpoint, Your

19     Honor, we -- the motion is the debtor's motion, and the

20     debtor is now I believe saying that they are in so many

21     words withdrawing this motion.

22              So I don't really from a procedural standpoint

23     understand how we, not being the debtor or the committee,

24     can procedurally push forward our bid that now has been

25     essentially rejected by both the debtor and the creditors'
```

1    committee.

2            Obviously, you know, had the debtor made a

3    different decision our decision would have been to stick by

4    our bid, because that's what we committed to do, but now the

5    -- you know, there has been a -- a wholesale shift in what

6    the debtor and the committee want to do, they want to reopen

7    the auction.  Our view is the auction ended on Thursday

8    evening, at that time we were declared by the debtor at

9    least and the committee I believe to be the best offer, now

10   their minds have changed, and it is not our intention to go

11   back and resume bidding, and we just don't want to be a part

12   of it anymore if that's going to be Your Honor's decision.

13           And, you know, we are not inclined to stick with

14   our last bid, we just want to withdraw if that's going to be

15   the decision of this Court.

16           THE COURT:  I see.  All right.  Thank you.

17           MS. SPRINGER:  Thank you.

18           THE COURT:  Mr. Wasserman?

19           MR. WASSERMAN:  Your Honor, Richard Wasserman for

20   RKJS Bank.

21           We're fully supportive of the debtors' position

22   that going back to the auction, but if as Ms. Springer has

23   just said to the Court on behalf of Nat. Penn that they want

24   to withdraw that's fine too.  And our position I think would

25   be, Your Honor, I think we should take a brief recess, but

1    would be -- if that's the case, if Your Honor is so to rule,

2    that we'd like to get approval of this enhanced bid today.

3    We're all here, we're the only bid, the only offer, and we

4    shouldn't delay it because we do want to move forward with

5    the regulatory approval as promptly as possible if we're the

6    only one who's a viable bidder.

7            So we'd like to take a brief recess and come back,

8    Your Honor, and put on the case to get that enhanced bid

9    approved by the Court today.

10           THE COURT:  I see.

11           Mr. Schmidt, how do you respond to what

12   Mr. Wasserman said?

13           MR. SCHMIDT:  Firstly, Your Honor, I'd just like

14   to respond to something that Ms. Springer said.  I don't

15   believe it is the fact that we are withdrawing any motion, I

16   think the sale motion is still what's on the calendar for

17   today so it certainly hasn't been withdrawn.

18           This is technically acquiescing to RKJS's motion

19   at the strong suggestion and request of the creditors'

20   committee who are the economic fiduciaries, we are

21   fiduciaries for them, they are the economic party in

22   interest, and you know, they strongly believe that the

23   enhanced RKJS bid is the right approach.

24           I think it does make sense to take a recess of

25   that, you know, we can actually iron out procedurally how we

1   think we should be going forward, especially in light of

2   Ms. Springer's comments as to what Nat. Penn's position is.

3              THE COURT:  You need to consult with Mr. Wasserman

4   for a moment?

5        (Pause)

6              MR. SCHMIDT:  Well, I guess Mr. Wasserman is

7   suggesting that we get a full ruling from the Court on -- I

8   guess on his motion before we hop to the next step or

9   process going forward.

10             THE COURT:  His objection and request that the

11  bidding be reopened.

12             MR. SCHMIDT:  Correct.

13             THE COURT:  Okay.  All right.  Ms. Springer, is

14  there any objection to the Court proceeding in that fashion?

15  I mean you've indicated to me that you don't want to press

16  your case standing along and your client doesn't want to

17  bid, so what is your objection, if you have one, to this

18  approach?

19             MS. SPRINGER:  Well, Your Honor, I don't know what

20  to really say here.  It's quite unusual for a bidder -- I

21  mean unless we object to the current bid I suppose that's on

22  the table that the debtor has now chosen to support and the

23  committee has chosen to support I don't think we have the

24  right to simply unilaterally say that our bid should be

25  accepted.

1          So, you know, I don't have an objection to Your

2     Honor ruling on their objection at this point.

3          You know, obviously there's been a dramatic shift

4     in what happened over the past couple of hours and the

5     debtor and the committee have made up their minds I suppose,

6     and so as far as we're concerned they've now -- they're now

7     choosing to go with a different bidder, and you know, that

8     is their choice I suppose.

9          THE COURT:  All right, fine.  Thank you.

10         I have considered all that's been said here today

11    as well as the evidence that was presented yesterday, and

12    frankly based on the evidence that was presented yesterday I

13    think that there was ample grounds upon which the Court

14    could, and I do sustain the objection and rule in favor of

15    the RKJS motion asking that the Court reopen the auction in

16    this case.

17         It's very clear to me from reading the cases that

18    were referred to the Court in the objection filed by RKJS

19    that there's ample authority for the Bankruptcy Court to

20    bring its own independent judgment to bear and try to strike

21    a balance between the auction process, the finality of that

22    process, and the need to entertain offers and bids that are

23    going to realize the most that can be obtained for the

24    benefit of the bankruptcy estate.

25         And I find from all of the evidence here that this

1    is such an appropriate circumstance in that the bidding

2    should be reopened for the purpose of entertaining the new

3    enhanced bid that's been stated on the record over the

4    course of the last 24 hours or so by RKJS.

5            I do that -- I don't suggest for a minute that

6    there's been anything done in bad faith or in any

7    inappropriate way by either of the bidders.  I think that

8    the participation here by everyone has been in good faith

9    and that the conduct of the auction, together with the

10   recent developments of the enhanced bid from RKJS and the

11   fact that the committee and the debtor now believe that the

12   enhanced bid of RKJS is the superior one and they want the

13   Court to entertain it, all of that is grounds in my mind for

14   the Court to reopen the bidding.

15           I rely in particular, although not exclusively, on

16   the decision of the Second Circuit Court of Appeals in

17   Financial News Network, a case reported at 980 F.2d 165 in

18   1992, and the subsequent cases that are analyzed by the

19   bankruptcy judge in New Mexico in the decision -- it's an

20   unreported decision that Mr. Wasserman directed the Court to

21   yesterday -- In re: Sunland, Inc., I realize it's

22   unreported, but that case -- in that case the bankruptcy

23   judge goes through an analyze in a decision that was

24   rendered on March 25th of this year with respect to the

25   applicable law and the discretion of the Court in

1  appropriate circumstances, which I find to be the case here

2  to reopen bidding.

3          So I'm going reopen bidding, I'm going direct the

4  parties to wherever they choose to do so in the next

5  15 minutes to confirm that what this bid is that has been

6  made by RKJS, confirm that in fact that Nat. Penn has

7  decided not to bid any further, and then report back to the

8  Court as to what the status of the auction is.  And if the

9  winning bidder is, as seems to be predicted by what's

10  happened so far, RKJS, then we will proceed with the hearing

11  on approval of that sale immediately.

12          Any questions or anything else we need to take up

13  at this point?  Fifteen minutes do it?

14          MR. SCHMIDT:  It should, Your Honor.

15          THE COURT:  All right, 15-minute recess.

16          THE CLERK:  All rise.  The Court is in recess.

17      (Recess at 1:14 a.m.)

18          THE CLERK:  The United States Bankruptcy Court for

19  the District of Maryland now resumes its regular session.

20          THE COURT:  All right, Mr. Schmidt, I think you

21  were at the podium with a report on what has happened in the

22  reopened auction.

23          MR. SCHMIDT:  Yes, Your Honor, Robert Schmidt,

24  Kramer Levin Naftalis & Frankel on behalf of First Mariner

25  Bancorp.

```
 1              We did have an opportunity to consult with both

 2   Nat. Penn Bank and with RKJS during the break.  Nat. Penn

 3   Bank confirmed that they would not be bidding any further at

 4   this point in time, and I don't believe they're in the

 5   courtroom at this point in time, so we did discuss with

 6   Mr. Wasserman and his colleagues how to -- how we thought

 7   best the proceed.

 8              I think it makes sense, you know, at this point in

 9   time to ask Mr. Wasserman or one of his colleagues to

10   reconfirm, you know, on the record in terms of their last

11   bid, and then in open court ask if there is any other party

12   who might be interested in further bidding or trying to top

13   that bid, and then proceed to move on to a sale approval

14   process.

15              THE COURT:  That sounds fine to me unless there's

16   some objection from any party in the courtroom.  Appears

17   there's no objection, so we'll turn it over to you,

18   Mr. Wasserman.

19              MR. WASSERMAN:  Thank you, Your Honor.  Richard

20   Wasserman for RKJS Bank.

21              Your Honor, I think we thought the best way to do

22   this is yes, first I am reconfirming that RKJS Bank is

23   standing by the bid that it earlier submitted and described

24   to Your Honor, but for the record I think it would be

25   helpful if Your Honor still has the exhibit book that we
```

1    were using for the hearing, there was an exhibit that was

2    not introduced in evidence during the testimony portion of

3    the hearing, which is Exhibit 5, and I'd like to move into

4    evidence Exhibit 5, which is the offer bid that RKJS

5    submitted on April 13th.  And we'd like to as the first step

6    in putting together the bid of RKJS would be that letter,

7    Your Honor.  It has attached to it, among other things, a

8    marked up purchase agreement, but I think if we have that in

9    evidence that's a good basis to then start to confirm the

10   rest of the --

11          THE COURT:  All right, just a minute.  Madam

12   clerk?

13       (Court confers with clerk)

14          THE COURT:  Is there any objection to the

15   admission of RKJS Exhibit 5?  Hearing none that exhibit --

16          MR. SCHMIDT:  Your Honor, no objection, but just

17   to be clear, this is a mark up of the APA that was

18   submitted, it is still being reviewed and will need to be

19   supplemented with the revised revisions to the bid that were

20   made to that.

21          THE COURT:  Understood.

22          MR. SCHMIDT:  Thank you, Your Honor.

23          MR. WASSERMAN:  Thank you, Mr. Schmidt.

24          THE COURT:  But it's admitted.

25       (RKJS Exhibit No. 5 was admitted)

1          MR. WASSERMAN:  Thank you, Your Honor.

2          Okay.  What I was going to say with that admitted,

3   Your Honor, then I would say that the balance of the RKJS

4   bid, consistent with the discussions --

5          THE COURT:  Just so we're clear, this Exhibit 5 is

6   the one that Mr. Kunisch I think stated on the record

7   yesterday that RKJS agrees it's bond by --

8          MR. WASSERMAN:  Stands by -- stands by that --

9          THE COURT:  -- and that it's been subsequently

10   amended by what Mr. Schiffer said earlier today.

11          MR. WASSERMAN:  Yes, Your Honor, that's exactly

12   where I was going to go.

13          THE COURT:  Which is what you're about to tell us.

14          MR. WASSERMAN:  Excuse me?

15          THE COURT:  Which is what you're about to tell us

16   about that.

17          MR. WASSERMAN:  Exactly, Your Honor.

18          THE COURT:  Okay.  Go ahead.

19          MR. WASSERMAN:  But it is the same one that

20   Mr. Kunisch yesterday did confirm we were standing by.

21          THE COURT:  Okay, good.

22          MR. WASSERMAN:  Okay.  So we have that.

23          And then the addition to the now final bid of --

24   and successful bid of RKJS are the representations that

25   Mr. Schiffer made earlier today as to the additional

1    elements that were agreed to with the committee and then

2    ratified by the debtor as well earlier today.  So those

3    would form the additional provisions of the successful bid

4    that we would hope to then present to Your Honor for

5    approval today.

6              What we are going to suggest is that if we can get

7    approval from Your Honor what we would do, we would attach

8    to the sale approval order a copy of the agreed document

9    after all parties have had a chance to look at the final

10   revisions.  So what would be submitted, Your Honor, would

11   not be a document that the parties are still debating or

12   have a problem with, it's the one that's agreed as being the

13   final order.

14             It was asked in some of our discussions what the

15   actual purchase price is, and I think that's helpful for the

16   record just to state that.

17             If Your Honor goes to 2.02(a) of the mark up, and

18   this has been verified by the debtor's financial advisor as

19   well, so I think all parties are in agreement as to this,

20   which is the purchase price section, Your Honor.

21             THE COURT:  Yes.

22             MR. WASSERMAN:  Okay.  The agreed purchase price

23   with the adjustments we've talked about, the additional

24   dollars, the $4 million additional is 17,725,949.  And as

25   you will read on in that paragraph, Your Honor, there's a

Page 27

```
 1    provision that allows that to be increased by an additional
 2    million dollars, so in effect the four goes five, if
 3    regulatory approval as defined in the agreement is not
 4    obtained by RKJS by April 30th.  So that would be an add on
 5    to the purchase price in the event there is not regulatory
 6    approval by April 30.
 7                THE COURT:  All right.
 8                MR. WASSERMAN:  Maybe Mr. Schmidt will want to
 9    confirm that that is the understanding of the debtor as
10    well.
11                MR. SCHMIDT:  Yes, Your Honor, that's our
12    understanding.
13                THE COURT:  All right, very good.
14                MR. WASSERMAN:  Okay.  Unless anyone has any
15    further questions I think that's where we are, Your Honor.
16                THE COURT:  All right.  Well, I think I understand
17    that.
18                Mr. Schmidt, I think you wanted me to ask so I do
19    so on the record, is there anyone in court today who wishes
20    to be heard for the purpose of proposing a bid to compete
21    with and arguably be a higher and better bid than the one
22    that's just been announced on the record by RKJS?
23                Let the record reflect there's no response, so we
24    have this bid before the Court, no one wishes to bid against
25    it, and we can proceed with a hearing on approval of this
```

Page 28

1    proposed sale.

2            Mr. Schmidt.

3            MR. SCHMIDT:  Yes, Your Honor.  With no objections

4    to the sale I think we should be able to proceed fairly

5    expeditiously in light of the record that was put before the

6    Court yesterday.

7            We would like to take maybe a very short break to

8    consider whether or not we want to put in an evidentiary

9    proffer based on the developments of this morning and the

10   board meeting that was conducted.  I don't think we need

11   more than 10 or 15 minutes at most, not even that.

12           THE COURT:  All right.  Well, let's take a ten-

13   minute recess.

14           MR. SCHMIDT:  Thank you.

15           THE CLERK:  All rise.  Court is in recess.

16       (Recess at 1:52 p.m.)

17           THE CLERK:  Please remain seat and had come to

18   order.  The United States Bankruptcy Court for the District

19   of Maryland now resumes its regular session.

20           THE COURT:  All right, Mr. Schmidt, I think we're

21   here for resumption of the hearing and approval of the

22   proposed sale.

23           MR. SCHMIDT:  That's correct, Your Honor.  For the

24   record Robert Schmidt, Kramer Levin Naftalis & Frankel on

25   behalf of First Mariner Bancorp.

1         Your Honor, in light of the developments of this

2    morning with respect to the revised RKJS bid we thought it

3    appropriate to supplement the record by -- by putting in

4    some additional testimony by way of proffer from Mark

5    Keidel, the debtor's interim CEO.

6         THE COURT:  All right, I have no objection to

7    proceed in that fashion unless somebody in the courtroom

8    wishes this witness to be called and sworn in.  Doesn't

9    appear to be the case.

10         Very well, we'll swear him in if I have any

11    questions or if it proves necessary to cross-examine him for

12    some reason, but you may proffer his direct testimony.

13         MR. SCHMIDT:  Certainly.  Thank you, Your Honor.

14         Your Honor, if called to the stand Mr. Keidel

15    would testify that at the beginning of today's hearing on

16    the debtor's sale motion the committee announced that it and

17    RKJS had negotiated several enhancements to the terms of the

18    proposal that RKJS had previously submitted to the Court and

19    to the various parties in interest on April 12th.

20         Mr. Keidel would testify that after that

21    announcement the debtor's professionals and executives

22    conferred and convened a telephonic meeting of the debtor's

23    board of directors, which took place at approximately 11:30

24    this morning.

25         At that meeting the debtor's professionals undated

1    the board on the status of the hearing of the sale motion,

2    of the various changes to the proposed RKJS bid, the

3    committee's change of position with respect to its previous

4    approval of the Nat. Penn bid, and you know, further advice

5    concerning the legal and financial implications of this

6    change of events.

7              Mr. Keidel would testify that the board also

8    considered the presentation from the legal and financial

9    advisors to the creditors' committee concerning the basis

10   for the committees' change in position and satisfaction with

11   the enhancements negotiated to the revised RKJS bid.

12             Thereafter the members of the board asked a number

13   of questions of their advisors and intensively discussed the

14   issues raised by the revised bid and the proceedings at this

15   hearing in this case to date.

16             Mr. Keidel would testify that at the conclusion of

17   that discussion in the exercise of their business judgment

18   and their recognition of First Mariner's fiduciary duties to

19   its creditor constituency the board unanimously determined

20   to support the RKJS motion to reopen the auction and to

21   support the revised RKJS bid as the highest and best bid

22   received to date.

23             And that would conclude the evidentiary proffer,

24   and Mr. Keidel is obviously in court and available to cross-

25   examine and/or questions from the Court.

1              THE COURT:  Does anyone wish to cross-examine the

2      witness?

3              MR. WASSERMAN:  Your Honor, one moment?

4              THE COURT:  All right.

5              MR. SCHMIDT:  Mr. Wasserman correctly points out

6      that I referred to the proposal as April 12th, it was

7      actually April 13th, although I must admit the days and

8      nights have been a little bit blurry.

9              THE COURT:  I understand.  There being no request

10     for cross-examination there's no need to swear the witness

11     in, I have no questions for him.

12             Anything else in support of the sale?

13             MR. SCHMIDT:  Nothing by way of evidence, Your

14     Honor, certainly one or two closing comments, and then also

15     a comment that we've largely ignored that the DIP motion

16     also has been rolling along conterminously with the sale

17     motion, and I would note that I just wanted to confirm for

18     the record, and Mr. Wasserman I believe is willing to

19     confirm, that the RKJS DIP remains in place and in full

20     force and effect as a result of presumably being declared as

21     the successful bidder.  There will not be a need to make any

22     changes to that DIP.

23             I would note, as Mr. Brody noted at the bid

24     procedures hearing, that you know, we had agreed previously

25     with the committee not to draw on that DIP until the

Page 32

```
 1   occurrence of the sale hearing, and now that this hearing
 2   has occurred it is our current intent to draw down the DIP
 3   in the next day or two or three.
 4             THE COURT:  All right.  Before we get to any sort
 5   of closing comments is there anyone else in the courtroom
 6   who wishes to present evidence in connection with the
 7   debtor's motion for approval of the proposed sale to RKJS?
 8   There's no response.
 9             All right, I'll hear closing comments and
10   arguments from counsel.
11             MR. WASSERMAN:  Yes, Your Honor.  I didn't know if
12   the request for evidence, Your Honor, included my just
13   responding to Mr. Schmidt's comment on the DIP, but I'm
14   certainly willing to confirm on the record that in fact the
15   DIP is in place, there have been no draws.  I would
16   certainly request there not be any draws entered until the
17   Court order is entered, which we hope will be in the next
18   day or two.  But with that RKJS is standing by with the DIP
19   facility.
20             THE COURT:  All right, I understand.
21             Mr. Schmidt.
22             MR. SCHMIDT:  And I can confirm that it's not our
23   intent to make a draw until the sale order is in fact
24   entered.
25             THE COURT:  All right.  So I'll hear your argument
```

1    for how this adds up to grounds for the Court to approve

2    what you're asking the Court to approve today.

3              MR. SCHMIDT:  Certainly, Your Honor, and I'll try

4    to be brief since it's been a long stretch.

5              Your Honor, as I said during my opening remarks

6    the debtor was very fortunate to have two strong bids from

7    sophisticated parties represented by experienced bankruptcy

8    and regulatory advisors.

9              The auction process certainly took some

10   interesting twists and turns, but we believe it was

11   ultimately highly successful, it achieved an economic result

12   of (indiscernible - 00:06:15 - last audio file) percentages,

13   but well in excess of 500 percent of the original stalking

14   horse price, all of which will -- or the vast majority of

15   which will go directly to the debtor's creditor constituency

16   which was looking at the time at a fairly bleak recovery,

17   now we think the odds of a decent recovery are substantially

18   enhanced.

19             Your Honor, as indicated in the evidentiary -- the

20   live testimony and the proffers the debtor's board and

21   senior management exercised in our view extraordinary

22   reasonable business judgment in evaluating the various bids,

23   in orchestrating and running the bid process, conducting and

24   leading board deliberations, and ultimately reaching the

25   conclusions that it reached along the way.

1          You know, we think there's ample evidence in the

2     record now to support your finding that the bid is -- the

3     current RKJS bid is the highest and best bid, that this was

4     an arms length transaction, that all parties acted in good

5     faith, and you know, we believe, you know, with that, you

6     know, that the Court should be able to approve the sale and

7     hopefully we'll be able to get the documentation squared

8     away and submitted to the Court at a reasonable hour

9     tomorrow so that the order can be promptly entered.

10          I'd like to just, you know, say that during the

11     course of this process, in particular Mr. Kidel and various

12     senior managers went above and beyond to manage the sale

13     process.  As I said, the process took a lot of twists and

14     turns, it entailed a lot of late nights, and you know,

15     ultimately we're optimistic that this transaction will get

16     closed quickly and efficiently, and that you know, First

17     Mariner will once again return to a well-capitalized status

18     and a well-capitalized Baltimore bank that will be poised

19     for growth in the future.

20          Again, we hope to get the closing quickly.  We

21     wish the RKJS team lots of success and good luck in moving

22     this process forward.  We'll ultimately be working arm and

23     arm with them to get this closed as quickly and efficiently

24     as possible and at the same time move this case along to a

25     -- to an ultimate hopefully prompt and successful

Page 35

1    conclusion.

2              THE COURT:  Thank you.

3              Anything from the creditors' committee?

4              MR. GETTLEMAN:  Your Honor, just -- Jeffrey

5    Gettleman from Kirkland & Ellis representing the creditors'

6    committee.  Just very briefly, Your Honor.

7              We did not file any objection to the sale as it

8    was originally presented.  Whatever issues we had with the

9    various documents were negotiated with the parties and

10   resolved to our satisfaction.

11             You know, we also believe, you know, we're pleased

12   with the result, and it came after, you know, continuous

13   consultation with the debtor, which we appreciate, and I

14   think I don't need to say anything other than the committee

15   wholeheartedly approves the sale.

16             THE COURT:  Thank you.

17             MR. GETTLEMAN:  Thank you.

18             THE COURT:  Mr. Wasserman, it looks like you might

19   have the last word here.

20             MR. WASSERMAN:  Thank you, Your Honor.

21             I think I speak on behalf of all counsel, we want

22   to thank Your Honor also for the patience with putting up

23   with lots of breaks during these proceedings, and we very

24   much appreciate the Court's supervision of the process.

25             I did want to just make just a couple comments I

1    think that Mr. Schmidt mentioned.

2              The form of sale approval order, we're going use

3    the one that was attached to the motion, that'll be the

4    basis of it.  You know, it'll be revised as need be based on

5    the developments since.  And I think Mr. Schmidt laid the

6    ground work that we believe that the purchaser will be a

7    good faith purchaser under 363(m) with the protections

8    attended thereto, that this is a sale free and clear under

9    363(f), all that's been put forth in the papers, Your Honor,

10   that have been submitted and will be contained in the sale

11   approval order that would be presented to Your Honor as

12   Mr. Schmidt said hopefully by tomorrow.

13             THE COURT:  All right, thank you.

14             MR. WASSERMAN:  Unless Your Honor has any further

15   questions I don't have anything further.

16             THE COURT:  I have no questions.  Thank you.

17             MR. WASSERMAN:  Thank you.

18             THE COURT:  I've considered the evidence, the

19   arguments, and as Mr. Schmidt says, it certainly has been an

20   eventful two days.  The outcome I think is definitely a good

21   economic result for this bankruptcy estate.

22             I appreciate all the hard work of counsel that's

23   gone into this case and the efforts of the two prospective

24   purchases.  As I said earlier, I think both purchasers

25   proceeded in connection with this case in good faith and

1    ultimately RKJS is the one that has prevailed.

2            I believe the circumstances of this case and the

3    facts before the Court are more than ample and appropriate

4    for me to make a finding -- the findings necessary to

5    approve the sale of the assets to RKJS as has been proposed

6    as modified and enhanced today pursuant to Section 363(f),

7    and to approve the debtor in possession financing loan.

8            I am prepared to entertain an appropriate order in

9    chambers as soon as it can be -- a draft can be completed

10   and uploaded to the Court for review.

11           I -- I'm not naive, because I once sat where

12   everyone out in the courtroom is and served as an associate

13   in a large law firm and know many people spent many late

14   lights working to get this case to where it is today, but if

15   it's at all possible for those of you who sit at counsel

16   table to stop and take a deep breath and perhaps let all the

17   support folks get a good night sleep before you rush to try

18   to get this order in for me to review I think that would be

19   a welcome result for everyone.  But I understand you'll

20   press on as you think you must, but I must say I think that

21   everyone could do with a good night sleep and we might end

22   up with a better order than we would if we decide to try to

23   draft it overnight.

24           But however you decide to do it and whenever you

25   get it to me we'll look at it as soon as we possibly can.

Page 38

1          Thank you all for your efforts, congratulations on

2    the outcome, have a good day.

3        (A chorus of thank you)

4          THE CLERK:  All rise.  This Court is adjourned.

5        (Proceedings concluded at 2:32 PM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 39

**I N D E X**

**E X H I B I T S**

| PARTY | NO | DESCRIPTION | ID. | EVID. |
|-------|----|-----------|----|-----|
| RKJS | 5 | APA | -- | 24 |

**RULINGS**

| | Page | Line |
|---|------|------|
| RKJS Motion to Reopen Auction | 20 | 10 |
| Approval of Sale | 36 | 18 |

Page 40

1                    C E R T I F I C A T I O N

2

3      I, Dawn South, certify that the foregoing transcript is a

4      true and accurate record of the proceedings.

5

6      Dawn South

           Digitally signed by Dawn South
           DN: cn=Dawn South, o=Veritext,
           ou, email=digital@veritext.com,
           c=US
7          Date: 2014.04.16 15:26:15 -04'00'

8      AAERT Certified Electronic Transcriber CET**D-408

9

10     Veritext

11     330 Old Country Road

12     Suite 300

13     Mineola, NY 11501

14

15     Date:  April 16, 2014

16

17

18

19

20

21

22

23

24

25