IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re | Bankruptcy No.: |
| First Mariner Bancorp | 14-11952-DER |
| Debtor | Chapter 11 |

U.S.TRUSTEE'S  OBJECTION TO APPLICATION OF SANDLER O'NEILL & PARTNERS FOR COMPENSATION

Judy A. Robbins, United States Trustee for Region Four, by undersigned counsel, hereby objects to the Application of Sandler O'Neill and Partners for compensation, stating:

1. Sandler O'Neill & Partners was employed by the Debtor both pre- and post-petition as investment banker and advisor, to assist the marketing and sale of the debtor's major asset, First Mariner Bank.  (Application, Doc. 43, filed 2/13/2014; Order, Doc.119, entered 3/7/14). Sandler O'Neill conducted the chapter 11 auction sale of the bank on April 10, 2014.

2. The Application for Employment of Sandler O'Neill was supported by a Verified Statement that failed to disclose that it had previously represented National Penn Bank, which emerged as one of only two bidders for acquisition of the bank. By Supplemental Declaration (Doc.193) filed April 25, 2014, Sandler O'Neill seeks to correct this deficiency.

3. However, this action is taken only after the non-disclosure was raised in court on April 14, 2014 during objections to the auction sale Sandler O'Neill conducted.

4. The omission highlights Sandler O'Neill's self-professed lack of prior experience in bankruptcy cases ('Firm had not done much, if any, work in bankruptcy cases before this', Testimony of William L. Boyan,III, during hearing on March 7, 2014).

5. This lack of experience in bankruptcy proceedings is not unexpected, because Sandler O'Neill specializes in bank mergers and acquisitions, and banks are excluded from eligibility for bankruptcy protection. 11 U.S.C. 109(b).

6. However, there is an emerging trend toward bank-holding-company bankruptcies, which appears to skirt the statutory restriction on affording banks the protections of Title 11.

7. Therefore the quandary presented by Sandler O'Neill's flawed disclosure of connections is one that underscores the questionable practice of using bankruptcy courts to facilitate bank mergers and acquisitions.

8. Sandler O'Neill failed properly to conduct a conflicts check in preparing its Affidavit of Disinterestedness and Connections. It did not include its own client base in its search. Had it done so, it would have realized its connection to National Penn, because National Penn had made inquiry into First Mariner during the fall of 2013, during the time National Penn was a client of Sandler O'Neill in pursuit of other, unrelated matters. As Mr. Boyan testified on March 7, 2014 and during cross-examination on April 14, 2014, National Penn had expressed its interest in First Mariner in the fall of 2013. At that time and thereafter, and into January 2014, National Penn was a paying client of Sandler O'Neill.  Hence Sandler O'Neill knew or had reason to know of the interest of National Penn in First Mariner at the time this case commenced and its employment application was filed, and an adequate internal search for connections should have resulted in a timely disclosure of same.

9. Even when the connection became an issue, and the source of a formal objection raised in court, Sandler O'Neill did not amend its disclosure until April 25, 2014.

10. These circumstances reveal a disturbing lack of sensitivity to the duties of a professional employed to render services to a fiduciary, which is the standard that obtains in all chapter 11 cases for professionals employed and compensated by the bankruptcy estate.

11.  A bankruptcy estate professional owes fiduciary duties. These require not only lack of disabling conflicts-of-interest, but a concern for the appearance of same. Knowing its connection to a bidder, its prior employment by this bidder as its client, and substantial compensation by this bidder, it ought to have been obvious to Sandler O'Neill that it could not or should not conduct the auction sale involving its former client, without –at least--a timely, fulsome, and on-the-record disclosure of the connection.

12. As recounted during the testimony on April 14, 2014, the auction process required that the bids of each participant be discounted by various factors for different contingencies. For example, the bids of National Penn had to be valued at a discount given that the consideration included illiquid securities. At one point in the process, National Penn negotiated a lesser discount rate for application to its bid on account of these securities.

13. The bidding process was thus anything but simple and precise, and the exercise of considerable judgment by those conducting the sale was required. Therefore, any connection between one conducting the auction and a bidder is likely to cause others to question the objectivity and impartiality of the former, as indeed occurred.

14. A key part of the objection of RKJS to approval of the auction sale concerned the non-monetized discount applied to its bids based upon the Debtor's view of the rockier road RKJS would face than National Penn for regulatory approval. Although testifying that he was not in control of this aspect of the bid considerations, Mr. Boyan volunteered that he had advocated consideration of this aspect as a key consideration throughout the marketing and sale process.

15. It can readily be seen, therefore, how the non-disclosure of Sandler O'Neill's connection to National Penn threw shadows over the process, laid the foundation for RKJS' challenge to the bona fides of the auction, and potentially threatened the approval of the sale of First Mariner.

16. The U.S.Trustee does not believe that the lapses here were intentional, fraudulent, or improperly motivated. However, the applicant's failure adequately to investigate the applicant's eligibility for employment by the debtor-in-possession requires accountability to the estate and creditors.

17. There is a duty in bankruptcy cases for professionals seeking employment to disclose all their connections with parties in interest. In re American Intern. Refinery, Inc., 676 F.3d 455 (5th Cir. 2012); In re Citiation Corporation, 493 F.3d 1313 (11th Cir.2007); In re Jennings, 199 Fed.Appx. 845 (11th Cir. 2006). The duty is on-going throughout the case. In re eToys,Inc., 331 B.R. 176 (Bankr.D.Del.2005). Disclosure "goes to the heart of the integrity of the bankruptcy system", In re B.E.S. Concrete Products, Inc., 93 B.R. 228, 236 (B.E.D.Ca.1988).

18. Had Sandler O'Neill disclosed in its Rule 2014(a) declaration that it had performed services for National Penn Bank before the case, and that National Penn Bank had, prior to the case, expressed interest in First Mariner, Sandler O'Neill most likely would not have been allowed to participate in, much less conduct, the auction sale. That it conducted the sale allowed the stalking horse, and eventual auction winner, RKJS, to oppose the sale, and may have induced National Penn to withdraw. After that point, there was only one entity seeking to bid for the Debtor. It is unclear what result would have obtained if the auction were not subject to attack on the basis of the flawed Sandler O'Neill disclosure of connections. However, it is possible that further bidding would have ensued, returning a higher result for the estate.

19. The Supplemental Declaration (Doc.193) is deficient in several respects. First, paragraph 5 avers that "Any necessary disclosures with respect to such Interested Parties were made…" . The U.S.Trustee takes issue with this assertion. It is because the class of potentially interested persons did not include current and former clients that the non-disclosure occurred, in the first

instance. The Supplemental Declaration still does not address this fundamental deficiency in the applicant's own vetting process.

20. Paragraph 8 contradicts the testimony given during the April 14, 2014 hearing, when it was testified that National Penn had expressed interest in the debtor in fall of 2013. According to the testimony at that hearing, this interest of National Penn in the Debtor was also expressed during the Court's March 7, 2014 hearing.

21. Furthermore, although the Supplemental Declaration asserts that "Sandler O'Neill applied its conflicts check procedures to National Penn" when "National Penn was identified as an additional bidder", there is no explanation of why the Declaration was not supplemented at that time.

22. "The disclosure requirements of Rule 2014 are applied strictly, …such that 'the [professional] has the duty to disclose all relevant information to the court, and may not exercise any discretion to withhold information…..It is the bankruptcy court that determines whether a professional's connections render him or her unemployable under sec.327(a)-not the other way around". In re Sundance Self Storage-El Dorado LP, 482 B.R. 613,631 (Bankr.E.D.Cal.2012).

23. The U.S.Trustee believes that the estate was required to bear significant additional expense, in the form of legal fees, as a result of Sandler O'Neill's faulty disclosures here. It ought to bear at least a significant portion of the burden in the way of a reduction of its requested compensation.

24. Further, Sandler O'Neill & Partners ought to undertake a revision of its internal review procedures to correct the flawed process that allowed it to file an inaccurate statement of connections in support of the application for its employment in a chapter 11 case. It ought to undertake to apply corrective procedures to any and all future services it performs in chapter 11 cases forthwith.

JUDY A. ROBBINS, UNITED STATES TRUSTEE

FOR REGION FOUR

Date:  May 6, 2014                                    By: /s/Edmund A. Goldberg_____

Attorney for U.S.Trustee, bar no. 08943

101 W. Lombard Street, Suite 2625

Baltimore, MD 21201

(410) 962-4300

Certificate   of   Service

I hereby certify that on May 6, 2014, I caused a copy of the foregoing to be served via ECF to those parties listed as being entitled to electronic notice, including counsel to the debtor, and William L. Boyan, III, and Sandler O'Neill & Partners, L.P., and counsel to the Creditors' Committee.

/s/Edmund A. Goldberg_____