IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

In re

**CAPITAL TRUST HOLDINGS, INC.**
(f/k/a First Mariner Bancorp)

    Debtor

Case No.: 14-11952-DER

Chapter 11

## UNITED STATES TRUSTEE'S OBJECTION TO
## KIRKLAND & ELLIS, LLP'S SECOND INTERIM FEE APPLICATION

Judy A. Robbins, the United States Trustee for Region Four, pursuant to §§ 327, 329 & 330 of the United States Bankruptcy Code, hereby objects to the "Second Interim Application of Kirkland & Ellis LLP, as Attorneys for the Official Committee of Unsecured Creditors for Allowance of Compensation and Reimbursement of Expenses for Services Rendered and Expenses Incurred From May 1, 2014 Through July 31, 2014" (the "Second Interim Application"), and as grounds therefor states as follows:

## INTRODUCTION

Kirkland & Ellis, LLP (Kirkland & Ellis) represents the unsecured creditors committee in this case.  In accordance with the Court's prior administrative Order on professional compensation,[1] Kirkland & Ellis filed the Second Interim Application.  The Second Interim Application requests the allowance of fees in the amount of $206,849.50 and reimbursement of

---

[1] On April 9, 2014, the Court issued and entered an order titled "Administrative Order Pursuant to 11 U.S.C. §§ 105, 328 and 331 Establishing Procedures for Interim Compensation and Reimbursement of Professionals." (*See* Doc. 155.)  The Order set forth procedures and schedules for professionals employed in this case, such as Kirkland & Ellis, to seek and receive interim compensation during the pendency of this bankruptcy case.

expenses of $10,103.68, earned and/or incurred between May 1, 2014 and July 31, 2014 (the "Second Interim Period").[2]

The Second Interim Application raises three general areas of concern.  In the absence of further evidence and/or justification, fees and expenses falling into these areas of concern are objectionable.  These areas of concern are the following:

1.    An inordinate amount of the fees and expenses sought in the Second Interim Application relate to the process of obtaining compensation.  Indeed, 52% of the hours worked and 46% of the fees incurred during the Second Interim Time Period are attributable to obtaining compensation for Kirkland & Ellis or other estate professionals;

2.    Many of the expenses for which reimbursement is sought are either not properly reimbursable by the estate or sufficient justification for reimbursement by the estate has not yet been demonstrated; and

3.    There is a miscellaneous set of fees and expenses for which the Second Interim Application does not provide sufficient information to determine whether compensation or reimbursement is appropriate.

## **FACTS AND BACKGROUND**

1.    Capital Trust Holdings, Inc., f/k/a First Mariner Bancorp (the "Debtor") commenced this case by filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code on February 10, 2014.

2.    Debtor's primary asset was its equity interest in First Mariner Bank and Debtor's primary purpose in commencing this case was to effectuate the sale of that equity interest and then to file a liquidating plan.  Debtor is not reorganizing.   (*See* Am. Mot. for Extension of Exclusivity Period, Doc. 278 at 1.)

---

[2] Some of the expenses for which reimbursement is sought in the Second Interim Application were actually incurred in April 2014.  Presumably, this is because those expenses were either not billed to or paid by Kirkland & Ellis until sometime after May 1, 2014.  The United States Trustee does not contend that there is anything improper about the timing of Kirkland & Ellis's request.

3.    According to its Schedules, Debtor had only three categories of assets on the date of filing: (i) its equity interest in First Mariner Bank, (ii) $1,442,621.78 in liquid assets contained in three bank or investment accounts, and (iii) $346,405 in receivables owed by a related entity.

4.    On June 17, 2014, Debtor closed on a sale of its equity interest in First Mariner Bank to RKJS Bank for an amount in excess of $18,000,000.  (*See* Docs. 252; 302 at 10.)

5.    Thus, at this point, there should be nothing left to do except distribute the proceeds of the sale, the liquid assets in the bank accounts and possibly collect and distribute any remaining outstanding receivables.[3]

6.    On August 29, 2014, Kirkland & Ellis filed the Second Interim Application.  (*See* Doc. 301.)

## ARGUMENT

### A.    STANDARDS AND BURDENS RELATING TO FEE APPLICATIONS.

Pursuant to § 330 of the Bankruptcy Code, a professional seeking compensation from the estate is limited to "reasonable compensation" for services that are "actual" and "necessary."  11 U.S.C. § 330(a)(1)(A).  Furthermore, a professional's fees are compensable only where they provide benefit to the estate.  *In re Bowe*, 365 B.R. 585, 588 (Bankr. D. Md. 2007); *In re Lilliston*, 127 B.R. 119, 120 (Bankr. D. Md. 1991); *see also* 11 U.S.C. § 330(a)(3)(C).  Unlike a proof of claim which is "deemed allowed" in the absence of an objection, a professional's fee application does not constitute *prima facie* evidence of the fee's validity or reasonableness.  *In re Morgan*, 48 B.R. 148, 149 (Bankr. D. Md. 1985).  To the contrary, the applicant bears the burden

---

[3] The United States Trustee does not have any information as to the collectability of these receivables.   No time appears to have been billed by any professional towards recovery of this receivable.

of proving entitlement to the fees sought.  *In re Leonard Jed Co.*, 118 B.R. 339, 347 (Bankr. D. Md. 1990).

Courts have recognized the difficulty of reviewing professional fees.  *In re TAK Communications, Inc.*, 154 B.R. 514, 516 (Bankr. W.D. Wis. 1993); *In re Assoc. Grocers of Colo., Inc.*, 137 B.R. 413, 418 (Bankr. D. Colo. 1990).  They have also recognized that where bills are voluminous and complex, it is appropriate to consider a sampling of those bills.  *Tak Communications*, 154 B.R. at 517-18.  Where such a sampling reflects overstatement or impropriety by the professional, courts will extrapolate that to the entire bill.  *See Id.* at 526; *see also Assoc. Grocers*, 137 B.R. at 421 ("[w]hile in some instances it may be appropriate for the Court to reduce the fees by subtracting or reducing the fees billed by the amount of the line entry, in a fee application of this size that method of reduction is nearly impossible[; i]nstead, the Court has attempted to correlate the degree of problems detected to a percentage and reduced the fees accordingly").

The United States Trustee has reviewed and analyzed the Second Interim Application and the accompanying bills.  In so doing, she uncovered instances of objectionable billing practices and instances that indicate the fees sought are unreasonable.  The United States Trustee has set those examples forth with as much specificity as possible.  However, it is simply not possible to determine the reasonableness of each billing entry from the bills provided.  The United States Trustee submits that the sampling of improprieties sufficiently taints Kirkland & Ellis's entire application such that, without more evidence by Kirkland & Ellis demonstrating the reasonableness of its fees, the Court should not approve the Second Interim Application.

**B.  An Inordinate Amount of Fees and Expenses Were Incurred to Get Kirkland & Ellis and Other Professionals Paid.**

**1.  An Inordinate Amount of Time and Fees Were Billed to Preparing Fee Applications For Kirkland & Ellis and Other Estate Professionals.**

Fifty-two percent of the hours Kirkland & Ellis billed during the Second Interim Period (170.5 hours) and forty-six percent of the fees billed during the Second Interim Period ($95,503.50) relate to nothing other than payment of Kirkland & Ellis and other professionals. During the Second Interim Period Kirkland & Ellis spent 88.2 hours, *more than any other single matter*, on its own fee applications. When added together with the time billed in the First Interim Fee Application, Kirkland & Ellis has spent more time on the "K&E Fee Applications" matter (138 hours) than on any other matter except for the sale of First Mariner Bank. (*See* Doc. 223 at 4[4]; Doc. 301 at 4.) Similarly, during the Second Interim Period, Kirkland & Ellis spent 82.3 hours, *more than any matter other than its own fees and the plan and disclosure statement*, on payment of other professionals.[5] (*See* Doc. 301 at 4.)

Thus, nearly half of the fees being sought in the Second Interim Application were incurred for the sole purpose of getting professionals paid. This inordinate expenditure on fee matters is inappropriate and should not all be charged to the estate. Any reasonable exercise of billing judgment would have resulted in a very significant reduction of these fees.

Attorneys are entitled to compensation for preparing fee applications. *In re On Tour, LLC*, 276 B.R. 704, 418 (Bankr. D. Md. 2002). However, such compensation must be

---

[4] All cited page references are to the page numbers on the ECF header at the top of the document, not to the page number at the bottom of the document.

[5] As discussed in more detail, *infra*, no plan or disclosure statement has yet been filed. Given that this is a liquidating case and that the primary asset was liquidated outside of any plan, why the various professionals need to expend so much time on a plan and disclosure statement, or why it would not be better to allow a Chapter 7 Trustee to distribute the estate without the need to incur the expense of a plan and disclosure statement is not readily apparent.

reasonable. *Id.* As an initial matter, spending this amount of time on fee applications and on getting paid is simply inappropriate and unreasonable. *See In re Carey*, Case No. 05-27404-SD, 2006 WL 5737978 (Bankr. D. Md., Jan. 20, 2006) (finding it unreasonable to seek a fee in which "42% of the claimed fee is attributable to applying for it").

Moreover, fee applications and related billing matters do not require complex legal skills. Both the Code and the court recognize that it is not reasonable to compensate the preparation of fee applications at the same rate as complex legal work. Thus, 11 U.S.C. § 330(a)(6) specifically provides, "[a]ny compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application." Additionally, Judge Schneider of this Court has held, "while the preparation of fee applications is compensable, the rate of compensation ought to be *much lower* than that chargeable for complex legal work." *In re Leonard Jed Co.*, 103 B.R. 706, 717 (Bankr. D. Md. 1989) (emphasis added).

Here, Kirkland & Ellis is billing the estate at its same high rates for working on its fee applications as for every other matter. In connection with the "K&E Fee Applications" matter, Kirkland & Ellis has billed the estate for attorney time of between $450 an hour and $895 an hour. (*See* Doc. 301 at 21-22.) Indeed, the para-professional rates being charged to prepare Kirkland & Ellis's fee applications are $200 to $330 an hour – more than many attorneys charge for complex legal work in this District.[6] (*See* Doc. 301 at 21.)

---

[6] For example, in connection with the "K&E Fee Application" matter, Kirkland & Ellis billed time at the following rates:

| Hours | Rates |
|-------|-------|
| 7.2   | $895  |
| 4.9   | $885  |
| 6.6   | $535  |
| 45.6  | $450  |
| 22.5  | $330  |
| 1.4   | $200  |

Review of the bills submitted with the Second Interim Application demonstrates just how much overbilling is associated with Kirkland & Ellis's own fee applications. For example, Kirkland & Ellis spent 5 hours of attorney time reviewing and analyzing its own invoice for April alone. (*See* Doc. 301-2 at 33-34.) An attorney charging $885 an hour then spent 0.3 hours corresponding with another attorney about that review. (*See* Doc. 301-2 at 34, 5/14/14 entry of J.Gettleman).

Attorneys are charging the estate for corresponding with their own billing department about "preparation of invoices," (*see* Doc. 301-2 at 73, 6/6/14 entry of D.Zubricki) and regarding what appears to be their own "billing issue[s]." (*See* Doc. 301-2 at 73, 6/9/14 and 6/11/14 entries of J.Gettlemen). In July, attorneys charged the estate for talking to each other about the changes in their own billing rates. (*See* doc. 301-2 at 113, 7/17/14 entry of D.Zubricki.) Charging the estate for the basic aspects of billing is inappropriate. *See, e.g., In re Computer Learning Centers, Inc.*, 285 B.R. 191, 220 (Bankr. E.D. Va. 2002).

Similar examples can be found throughout the "Other Professional Fee Apps" matter as well. For instance, much of the time billed in that matter relates to essentially preparing Carl Marks Advisory Group's ("Carl Marks") fee application for that entity. This is so despite the fact that in the application to employ Carl Marks, the Creditors Committee touted Carl Marks as having "diverse experience and extensive knowledge in the field of bankruptcy" and having "been retained to provide financial and turnaround consulting with the authorization of courts in many different bankruptcy cases throughout the United States." (*See* Doc. 147 at ¶¶ 11, 14.) Until April 21, 2014, Carl Marks was being paid a flat fee of $65,000 a month. (*See* Doc. 147 at ¶¶ 17-18; Doc. 236 at ¶ 3.) After that it charged rates of $475 to $750 an hour. (*See* Doc. 147 at ¶ 18; Doc. 236 at ¶ 4; Doc. 302 at ¶ 2.) Carl Marks also seeks a success fee of nearly $900,000.

(*See* Doc. 302 at ¶¶ 5-7.)  Surely Carl Marks is capable of preparing its own fee applications or at least doing so without the amount of assistance Kirkland & Ellis has provided here.

Moreover, as stated above, until April 21, 2014, Carl Marks was paid a flat fee of $65,000 a month and its "success fee" is a straight commission.  (*See* Doc. 147 at ¶¶ 17-18.) That compensation was set out in Carl Marks's employment application and should require almost no work in a fee application.  Other than those pre-set amounts, Carl Marks's applications contain a grand total of 7.9 hours of work ($4,797.50).  (*See* Docs. 236, 302.)  Yet, Kirkland & Ellis spent nearly 40 hours, and incurred fees of $23,123 working on Carl Marks's fee applications.  (*See* Doc. 301-2 at 39-45, 77-85, 116-122.)  Of that, 11.5 hours were billed by a partner with an average billing rate of $893 an hour.  (*See* Doc. 301-2 at 39-45, 77-85, 116-122.)

## 2.      Kirkland & Ellis Seeks Reimbursement of Improper and Unjustified Expenses.

In addition to its fees, Kirkland & Ellis seeks reimbursement of many expenses in connection with the preparation of its and other professionals' fee applications that (a) are unreasonable, (b) are inconsistent with applicable local rules, or (c) for which insufficient justification has been provided.  Although these expenses are not themselves significant in terms of dollar amounts, they demonstrate a systematic failure to adhere to appropriate billing standards.

In connection with its own fee application and with the fee applications of other professionals, Kirkland & Ellis seeks reimbursement of the following categories of expenses:

    1.      Standard copies or prints
    2.      Color copies or prints
    3.      Scanned images
    4.      Overnight delivery
    5.      Local transportation

6.    Computer database research
7.    Overtime transportation
8.    Overtime meals
9.    Secretarial overtime.

(*See* Doc. 301 at 22-23.)  Each of these will be addressed in order.

- Standard copies or prints

Certainly, it is reasonable to make photocopies in connection with fee applications and the United States Trustee does not believe that Kirkland & Ellis made excessive or unnecessary copies.  However, the local rules provide a cap of $0.20 per page for copies unless an outside copy service is used.[7]  *See* Local Rules, Appx. D at § C.  Kirkland & Ellis, however, has not provided sufficient information to determine whether it has complied with that cap.  Kirkland & Ellis has not provided the per-page charge or the number of pages copied so that such a charge can be calculated.  In the absence of such information, Kirkland & Ellis is not entitled to reimbursement of those charges. *See, e.g.*, *In re Computer Learning Centers, Inc.*, 272 B.R. 897, 910 (Bankr. E.D. Va. 2001) (denying reimbursement of expenses for photocopies where "no per page rate" was disclosed).

- Color Copies

Like the regular copies, Kirkland & Ellis has not provided the price per page of the color copies for which it seeks reimbursement.  More importantly though, there would not appear to be any reason that color copies would be needed in connection with a fee application.  Fee Applications are court documents.  They are filed electronically and are comprised entirely of text.

---

[7] There is no indication that an outside copy service was used here.

- Scanned Images

The Second Interim Application provides insufficient information to determine what these are or what they were used for.  Like the color copies though, there does not seem to be any reason such an expense would be necessary for a fee application.

- Overnight Delivery

During the Second Interim Period, Kirkland & Ellis incurred overnight delivery charges on May 15, May 20, June 6, and June 23 in connection with its "K&E Fee Applications" and "Other Professional Fee App" matters.  (*See* Doc. 301-2 at 38, 76, 86, 115.)  Based on the recipients of these deliveries (including the United States Trustee), the United States Trustee presumes these were incurred for service of Kirkland & Ellis's monthly fee statements in accordance with the Court's April 9, 2014 administrative Order (*See* Doc. 155).

Although the United States Trustee recognizes that overnight delivery is one of the methods of service specifically permitted by the administrative Order, it is one of the most expensive methods permitted.  The Order also allows for service by both fax and e-mail, either of which would cost the estate nothing.  (*See* Doc. 155 at 2.)  In this day and age, service by e-mail is not only the most cost effective method but the easiest as well.  The United States Trustee submits that incurring an expense for overnight delivery when the same result could have been achieved by free e-mail is not a reasonably necessary expense.

- Local/Overtime Transportation

On May 10, June 10 and June 24, 2014, Kirkland & Ellis incurred expenses for taxis taken by attorney David Zubricki in connection with its "K&E Fee Application" matter for which Kirkland & Ellis has sought reimbursement as "Local Transportation" and "Overtime Transportation." (*See* Doc. 301-2 at 38, 76.)  It is unclear what this is for.  The United States Trustee presumes that, as an accommodation to its employees, Kirkland & Ellis reimburses employees for taxis home where they stay at work past some particular time of day.

First, the Local Rules do not address local travel but do provide that "actual expenses for out-of-town travel are reimbursable."  *See* Local Rules, Appx. D, § C.  By its silence, it appears that the Local Rules therefore preclude the reimbursement of local travel.  Additionally, Mr. Zubricki would have had to return home regardless of the time he left the office.  An attorney's expense to commute from home to office is not an expense that is properly borne by the estate. *In re First Software Corp.*, 79 B.R. 108, 120 (Bankr. D. Mass. 1987) (disallowing meals and local travel as ordinary costs of doing business in the absence of extraordinary circumstances); *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 844 (Bankr. D. Vt. 1987) (disallowing reimbursement of local meals and local taxis and travel") *In re Thacker*, 48 B.R. 161, 164 (Bankr. N.D. Ill. 1985) ("local commuting expenses and meal expenses of individual employees" is overhead that is not reimbursable by the estate).

Moreover, if the United States Trustee is correct that this is for travel home when staying at the office late, there is certainly no reason, other than Kirkland & Ellis's own procrastination, that would require late night work on a fee application.  A fee application is not an emergency matter.  *See In re Latshaw Drilling, LLC*, 481 B.R. 765, 820 (Bankr. N.D. Okla. 2012) ("[w]ithout evidence of special circumstances, it is not reasonable to impose the cost of a

professional's transportation to and from the office upon a client ... simply because the attorney chose to work on that client's matter after normal working hours").

In any event, travel of any sort is not a reasonably necessary expense in connection with the preparation of a fee application. There is nothing in connection with a fee application that cannot be performed from Kirkland & Ellis's offices.

- Computer Database Research

The Local Rules allow for the reimbursement of computerized legal research. However, the rules expressly require that in order for such reimbursement to be allowed, the application must provide "a description of the legal research undertaken." *See* Local Rules, Appx. D, § C. Additionally, the reimbursement cannot exceed the actual cost of the research. *Id.*

During the Second Interim Period, Kirkland & Ellis incurred several expenses for computer research from Restructuring Concepts LLC in connection with its "K&E Fee Application" matter and its "Other Professional Fee App" matter. (*See* Doc. 301-2 at 38, 115.) Kirkland and Ellis also incurred expenses for West computer research and PACER in connection with its "Other Professional Fee Apps" matter. (*See* Doc. 301-2 at 122.) The Second Interim Application provides no explanation as to what these are, how they related to the preparation of fee applications, why they were reasonably necessary to incur, or how they benefitted the estate. Without such information, Kirkland & Ellis has failed to carry its burden of proof on as to this expense.[8]

---

[8] The United States Trustee is concerned, based on the amount of the West legal research charges, that Kirkland & Ellis pays a flat rate for unlimited Westlaw usage but that it is nevertheless artificially charging the estate as if billed on a per transaction basis.

- Overtime Meals

On May 10, 2014, Kirkland & Ellis incurred an expense for "Overtime Meals – Attorney" apparently for a meal for Attorney David Zubricki.  (*See* Doc. 301-2 at 38.)  The Local Rules expressly provide, "[c]harges for meals are generally not reimbursable unless justified under appropriate circumstances or unless incurred as part of otherwise reimbursable out-of-town travel."  *See* Local Rules, Appx. D, §  C; *see also Leonard Jed*, 103 B.R. at 711-12 ("[r]eimbursement for meals and secretarial overtime will be disallowed where the applicant has shown no compelling need to provide them in the first place"); *First Software Corp.*, 79 B.R. at 120; *S.T.N. Enterprises*, 70 B.R. at 844; *Thacker*, 48 B.R. at 164.


- Secretarial Overtime

With respect to overtime, the Local Rules provide, "[o]vertime for non-professional and paraprofessional staff is reimbursable only if specifically justified in the application as necessary under the circumstances."  *See* Local Rules, Appx. D, § C.  Although Kirkland & Ellis has included several charges for secretarial overtime in the Second Interim Application, it nowhere provides any explanation as to why such overtime expenses were necessary to incur.  *See* Doc. 301-2 at 76, 86, 115, 122.)

Indeed, most of these appear to have been incurred for simple "proofreading" (*see* Doc. 301-2 at 76, 5/29/14 entries, at 115, 6/16/14 entry, at 122, 6/4/14 entry, ) or "word processing" (*see* Doc. 301-2 at 86, 5/31/14 entry, at 122, 6/3/14 entry.)  There does not appear to be any reason these tasks could not have been performed during normal work hours when no additional cost to the estate would have been necessary.  *See* Local Rule, Appx. D, § C ("[d]aytime, ordinary business hour charges for word processing, proofreading, secretarial, library and other

- 13 -

staff services ... are generally considered office overhead items and, therefore, not reimbursable unless specifically justified in exceptional circumstances"); *see also Leonard Jed Co.*, 103 B.R. at 711-12  ("[r]eimbursement for meals and secretarial overtime will be disallowed where the applicant has shown no compelling need to provide them in the first place").

### C.      Improper or Unsupported Expenses Related to Matters Other Than Fee Applications.

Throughout the Second Interim Application, Kirkland & Ellis seeks reimbursement of expenses of the types described in §B.2 above in connection with matters other than fee applications.  These requests suffer from the same infirmities as described in that section.

In addition, there are other types of expenses sought throughout the Second Interim Application that are unsupported and that appear inappropriate.  *As examples only*, some of these are described below:

- Cell Phone Calls

Kirkland & Ellis has sought reimbursement for various cell phone calls.  (*See e.g.*, Doc. 301-2 at 11 entry of 4/16, at 53 entries of 3/23 and 5/16.)   There is little to no explanation about these charges, though it appears they may be long distance charges.   The long distance component of cell phone calls is reimbursable if reasonably necessary.  *See* Local Rules, Appx. D, § C.  Normally, however, cell phone services do not charge extra for long distance calling. Thus, it is not clear that these expenses are even actual expenses, let alone reasonably incurred expenses.

- 14 -

- <u>Local Travel</u>

In addition to taxi expenses similar to the types described in connection with the fee application matters, Kirkland & Ellis seeks reimbursement of what appears to be transportation from attorney Jeffrey Gettleman's home to Kirkland & Ellis's offices on April 9, 2014.  On April 9, 2014, Kirkland & Ellis incurred two charges in connection with transportation for attorney Jeffery Gettleman.  The first was from Valparaiso, Indiana (which based on the other entries appears to be Mr. Gettleman's home) to 300 North LaSalle, which is the address of Kirkland & Ellis's offices.  (*See* Doc. 301-2 at 91, first 4/9 entry.)  Then, there is a second charge from Kirkland & Ellis's offices to Midway Airport.  (*See* Doc. 301-2 at 91, second 4/9 entry.)

The expense of commuting from Mr. Gettleman's home to Mr. Gettleman's office should not be charged to the estate.  *Latshaw Drilling* 481 B.R. at 820; *First Software Corp.*, 79 B.R. at 120; *S.T.N. Enterprises*, 70 B.R. at 844; *Thacker*, 48 B.R. at 164 (Bankr. N.D. Ill. 1985).  That does not change just because the commute occurred on a day that Mr. Gettleman also flew to Baltimore. *See In re Bank of New England Corp.*, 134 B.R. 450, 454, 457 (Bankr. D. Mass. 1991) ("a professional travelling directly from home to court should deduct normal commuting time from the calculation of allowable travel time" and "no payment will be made for commuting expenses").

In addition, it appears that the charges for transportation to the airport are overly luxurious.  According to Google Maps, the distance from Kirkland & Ellis's offices to Midway Airport is 11.1 miles.  That is a mile and a half longer than the distance from this Court House to BWI Airport.  A taxi from the Court House to BWI airport is between $30 and $35.  (*See e.g.,* www.yellowcabofbaltimore.com ($30 flat rate from downtown Baltimore to BWI); www.bwiairporttaxi.com (approximate fare from BWI to Baltimore Inner Harbor is $35.00).

While obviously prices range from city to city, the various airport trips for which Kirkland & Ellis seeks reimbursement were all between $80 and $210 with an average cost of $134.37.[9]

### D.    Miscellaneous Items of Question

The largest matter in terms of dollars, at $63,611.00, and second largest matter in terms of time, at 85.3 (2.9 hours less than billed to its own fee applications and 3 hours more than billed to other professionals' fee applications), is work on Debtor's plan and disclosure statement.

At this time, no such plan and disclosure statement have been filed so it is not possible for the Court or the United States Trustee to sufficiently analyze the propriety of these fees. There are, however, a few pertinent observations to be made:

1.    This is a liquidating plan.  There are, at this time, only cash and possibly some receivables.  This should not be a complicated plan and disclosure statement.  Yet, combined, the Creditors Committee and Debtor's counsel have incurred almost $250,000 in fees for a plan and disclosure statement that has not yet been completed.

2.    It appears Debtor has roughly $20,000,000 in assets.  Although distribution of that sum by a Chapter 7 trustee could result in a commission of as much as $623,250.00, the actual commission would likely be significantly less given that the assets for distribution have already been marshaled. Thus, the value of any continued expenditures on a plan and disclosure statement, or on any other matters not resulting in an increase in assets for distribution, is questionable at this point.

In the absence of some explanation as to why such significant fees are necessary for the plan and disclosure statement in this case, such fees cannot be approved.

---

[9] Many of the trips were made from Mr. Gettleman's home rather than his office.  However, the estate should not be charged for any more than the trip from Mr. Gettlman's office to the airport because Mr. Gettleman would have to commute to his office if he were not traveling to Baltimore and such a charge would not be reimbursable.  *See Bank of New England Corp.*, 134 B.R. at 457.

In addition to the fees incurred concerning the plan and disclosure statement, there is insufficient justification for the fees incurred with respect to the matter titled "Case Administration."   During the Second Interim Period, this matter has consisted primarily of someone "[p]repar[ing] and distribut[ing] docket updates" every day or two. (*See* Doc. 301-2 at 25, 63-64.)[10]  It is not clear what benefit there is to the estate to have someone preparing daily updates to the docket.  All attorneys signed up in the case receive ECF notifications of new filings.  This appears to be little more than a waste of time and resources.  Without further justification, such fees should not be permitted.

### E.    RESERVATION OF RIGHTS

In addition to the objections noted above, the United States Trustee reserves the right to object to any and all fees and reimbursements sought in any final fee application whether raised in this Objection or not

### CONCLUSION

For the reasons stated above, the Court should sustain this objection and deny any improper compensation and reimbursements sought by Kirkland & Ellis.

---

[10] These docket updates were apparently prepared and distributed on May 8, 12, 19, 22, 23, 27, 28, 29, 30, June 2, 3, 4, 5, 6, 9, 10, 11, 12, 16, 17, 19, 23, 24, 25, 26, 27, and 30.  The practice appears to have stopped in July.

Respectfully submitted,

Dated: September 11, 2014

Judy A. Robbins,
United States Trustee for Region Four

 /s/ *Gerard R. Vetter*
Gerard R. Vetter (Fed. Bar No. 08521)
gerard.r.vetter@usdoj.gov

 /s/ *Edmund A. Goldberg*
Edmund A. Goldberg (Fed. Bar No. 08943)
edmund.a.goldberg@usdoj.gov

 /s/ *Hugh M. Bernstein*
Hugh M. Bernstein (Fed. Bar No. 23489)
hugh.m.bernstein@usdoj.gov

United States Department of Justice
101 W. Lombard Street, Suite 2650
Baltimore, MD 21201
(410) 962-4300

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY, that on this 11th day of September, 2014, a copy of the foregoing

objection was mailed, first class, postage prepaid, to the following:

Gary R. Bronstein
c/o Kilpatrick Townsend & Stockton LLP
607 14th St., NW
Washington, DC 20005

Paul H. Deutch
Rust Consulting/Omni Bankruptcy
1120 Avenue of the Americas
4th Fl
New York, NY 10036

Kilpatrick Townsend & Stockton LLP
3607 14th Street, NW
Washington, DC 20005

Kramer, Levin, Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Robert T. Schmidt
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

David R. Seligman
c/o Kirkland & Ellis
300 North LaSalle
Chicago, IL 60654

Joel I Sher
Shapiro Sher Guinot & Sandler
36 So. Charles Street
Suite 2000
Baltimore, MD 21201

Wells Fargo Bank, National Association
Eric A. Schaffer
225 Fifth Avenue
Pittsburgh, PA 15222

William E. Williams
c/o Stegman & Company
405 East Joppa Road
Baltimore, MD 21286

Yumkas, Vidmar & Sweeney, LLC
2530 Riva Road, Suite 400
Annapolis, MD 21401


      I HEREBY FURTHER CERTIFY, that according the Court's CM/ECF system, each of

the following persons received electronic service of the Objection:


- Jan Berlage     JBerlage@GHSLLP.com
- Edmund A. (UST) Goldberg     Edmund.A.Goldberg@usdoj.gov
- Christopher R. Harris     christopher.harris@lw.com
- Anastasia L. McCusker     alm@shapirosher.com,
  lmt@shapirosher.com;ejd@shapirosher.com
- Thomas Angelo Pitta     tpitta@emmetmarvin.com
- Jeffrey Neil Rothleder     jeffrey.rothleder@arentfox.com,
  andrew.silfen@arentfox.com;ronni.arnold@arentfox.com;manuel.arreaza@arentfox.com
- Martin H. Schreiber     mhs@schreiber-law.com
- Dennis J. Shaffer     dshaffer@wtplaw.com,
  kmccruden@wtplaw.com;ttilghman@wtplaw.com
- Joel I. Sher     jis@shapirosher.com,
  ejd@shapirosher.com;lmt@shapirosher.com;msw@shapirosher.com
- US Trustee - Baltimore     USTPRegion04.BA.ECF@USDOJ.GOV
- Richard Wasserman     rlwasserman@venable.com
- Andrew M Weiner     aweiner@reedsmith.com, lzabel@reedsmith.com
- Lawrence Joseph Yumkas     lyumkas@yvslaw.com,
  pgomez@yvslaw.com;yvslawcmecf@gmail.com
- Daniel Joseph Zeller     djz@shapirosher.com,
  lmt@shapirosher.com;ejd@shapirosher.com;mgh@shapirosher.com


                        /s/ *Hugh M. Bernstein*
                        Hugh M. Bernstein